## SCHUSTER v. SCHUSTER

No. 5690.   Decided January 15, 1936.   (53 P. [2d] 428.)

Supplemental Opinion January 24, 1936.

258

*Horace C. Beck* and *P. G. Ellis*, both of Salt Lake City, for appellant.

*E. A. Rogers*, of Salt Lake City, for respondent.

EVANS, District Judge.

From a decree of divorce in favor of plaintiff, the defendant appeals. The complaint charges cruelty in general and also in specific terms. Its sufficiency was not challenged by demurrer. The defendant denied generally and specifically the allegations of cruelty, and by way of cross complaint charges the plaintiff with having provoked the assaults of which she complains. The reply denies the allegations of the counterclaim as alleged. The defendant assigns as error the overruling of his objection to the taking of evidence, upon the ground that the complaint does not state facts sufficient to constitute a cause of action.

The complaint alleges that one Kenneth Schuster, defendant's sixteen year old son by a former marriage, abused and violently assaulted plaintiff, and that the defendant refused to discipline his son and upheld him in such conduct. It is contended, first, that the complaint was insufficient in failing to allege that the acts complained of were without provocation on plaintiff's part; and, second, that the complaint does not allege that the defendant did not inquire diligently and in good faith to discover the truth as to Kenneth's conduct.

In some states it is held that the complaint must allege facts negativing misconduct on the part of the plaintiff and showing that the cruelty was unprovoked. The decisions, however, are based upon special statutory provisions authorizing a divorce "to the party not in fault." "In the absence of statute, misconduct of plaintiff affording justification for the acts complained of must be

alleged in the answer in order to be proved in defense." 19 C. J. 115. There is nothing in the statutes of this state which requires the plaintiff to negative misconduct on her part. In any event, the issue is squarely presented by the allegations of the cross complaint wherein it is alleged "that it was impossible that he (Kenneth) should not react unfavorably in some degree to the constant nagging, the harsh, cruel, defamatory and provocative acts and conduct of the plaintiff towards him."

The second objection to the sufficiency of the complaint is predicated upon the theory that it was the defendant's duty only to investigate and decide, and that his decision upholding the acts of Kenneth is not reviewable. It is contended that in the father, as head of the family,

"is centered all the legislative, executive and judicial powers of government. In his training of the child he is priest, pedagogue and playfellow in one. In disciplinary matters he is judge, police and probation officer. His decisions are final, unless modified by himself, and are put into effect by force of his own word or act. * * * The power of a parent to train, discipline and punish his child is in the highest degree discretionary * * * to determine the degree of transgression, if any, exists and to apply the remedy. It embraces the right and power to determine what is the truth and fact in any matter or incident where his supervision is invoked and the right to say what is right and wrong and what, if any, remedy the facts call for. No one, not even a step-mother, has any vested right or interest in any specific remedy for a given case."

It is further contended that the complaint should allege malice in deciding in favor of Kenneth and against the plaintiff. No cases are cited in support of this view. The general rule, however, is as stated in 19 C. J. 47:

"Permitting those under his authority so to conduct themselves toward his wife as seriously to impair her health constitutes cruelty on the part of the husband entitling the wife to a divorce, but it has been held that failure of a husband to restrain a third person from committing an assault on his wife in his presence does not constitute cruelty entitling her to a divorce unless he is shown to make the act his own, either by procurement or prior assent."

It was held in the case of *Holt* v. *Holt*, 204 Mass. 25, 90 N. E. 392:

"undoubtedly, if the assault were in any degree participated in or encouraged or even afterwards approved by the husband, it would have been material evidence of cruelty on his part; in view of the duty of protection owed to a wife by her husband, it would perhaps have been as strong evidence against him as if he had himself committed the assault. But he cannot be held answerable for the act of a third person, even of one with whom his relations were as close and intimate as was claimed to be the case here, unless he is shown to have made the act his own, either by procurement, or prior assent, or by acquiescence or subsequent approval and adoption."

As before stated, the complaint alleges that the defendant constantly upheld his son in said conduct and has refused and declined to discipline him, and that the defendant stated that Kenneth Schuster was right in his conduct towards the plaintiff. This, we think, is a sufficient allegation that the defendant made the acts his own by subsequent approval and adoption. But here again the allegations of the counterclaim cure any defect in this respect. The defendant recites at length the acts complained of in the complaint, alleges that the assaults were provoked by the plaintiff and justified Kenneth in his conduct, even to the extent of inflicting physical injuries.

In the case of *Chesney* v. *Chesney*, 33 Utah 503, 94 P. 989, 14 Ann. Cas. 835, it was held that defects in substance in the complaint may be cured by averments in the answer, and that the issues upon which a case is tried and judgment entered depends, not upon the allegations of the complaint alone, but upon a reasonable construction of all the pleadings when considered together. It appears, therefore, that the objection to the taking of testimony was properly overruled. It was no longer a question as to whether the complaint, standing alone, was insufficient for the purpose of taking testimony, but whether all of the pleadings together presented the issues necessary to support the final judgment as entered.

The next assigned error is the rejection of evidence as to the character, manners, and habits of the plaintiff's son Winthrop Cade. The court had admitted evidence tending to show that the defendant's son, Kenneth Schuster, was willful, unmanageable, incorrigible, and disobedient. The defendant contended that it was relevant to show, as an offset to this testimony, that Winthrop Cade was no better than Kenneth, and that because the plaintiff held up her own son as a paragon of virtue, it thus caused the defendant mental distress. It is not suggested in the offer that Winthrop's conduct towards the defendant was in any sense improper, and it is therefore difficult to see how a comparison of the virtues or vices of Kenneth and Winthrop could have constituted cruelty, even though plaintiff extolled the virtues of her own son. We must hold that this assignment is without merit.

The remaining assignments assail the findings upon the ground of insufficiency of the evidence, and conclude with the prayer that the trial court's findings and decree be set aside, and whereas both parties have had a full and fair trial and an opportunity to present all their evidence, that a decree be entered in favor of the defendant. We concur with the view expressed by appellant that both parties have had a full and fair trial and an opportunity to present all of their evidence, saving only such as we have heretofore indicated was properly excluded, and we have carefully examined the record for the purpose of determining whether or not, in our judgment, the findings of the trial court are correct.

Both plaintiff and defendant seek a separation. The defendant can have no reason for complaint, except as to what he conceives to be the consequences of a decree in favor of plaintiff. The defendant contends that a decree in his favor, because of the fault of plaintiff, precludes her right to the allowance of alimony or suit money. The charges are not of such a nature as to injure the social standing of either party, or to bring them into dis-repute. In oral argument counsel

very frankly stated that the objectionable part of the decree was the allowance of alimony and suit money; that a decree in favor of the defendant, for the fault of plaintiff, would necessarily result in a forfeiture of her right to alimony or suit money. Upon this question the decisions are not uniform. The conduct of the parties seems to be a determining factor.

The parties were married in January, 1931. There was no issue of this marriage, but plaintiff by a former marriage had one son, Winthrop Cade, aged 17, and defendant by a former marriage had a daughter, Louise, aged 15, and a son, Kenneth, aged 16. After the marriage they all lived together as one family. The plaintiff and defendant were congenial and considerate of each other. There was no discontent or friction so far as Louise and Winthrop were concerned. The conduct of Winthrop was not such as to cause any serious disagreement, except it is claimed that plaintiff was not impartial as between him and Kenneth in the matter of discipline. However, it is apparent that Winthrop was much less difficult than Kenneth; the same is true of Louise, who was fond of plaintiff and loved her as a mother. From the mass of testimony, much of which is in dispute, it is evident that Kenneth was insolent and untractable. He had been repeatedly suspended from school for insubordination. On one occasion, through plaintiff's intercession, he was reinstated. Friction between Kenneth and plaintiff seems to have been due to her efforts to discipline him. On many occasions he was disrespectful and abusive, and on three occasions assaulted her, inflicting serious bodily injuries.

The defendant admittedly knew of this conduct and testifies that he admonished Kenneth. This, however, is scarcely consistent with the allegations of the cross complaint, wherein it is alleged that the conduct of Kenneth has been good and his attitude towards the plaintiff respectful and forebearing, but that he reacted unfavorably to the constant nagging, the harsh, cruel, defamatory, and provocative acts and conduct of the plaintiff towards him. In deciding that

Kenneth was right and that the plaintiff was wrong, defendant contends that he acted judicially; that he had a right to exercise a discretion; that if he decided that Kenneth was right in assaulting plaintiff, this discretion was not subject to review by the courts. We are cited to a number of cases which define judicial discretion, but none which support the view contended for by defendant. There is evidence in the record which, if undisputed, might justify the inference that at times plaintiff provoked Kenneth, but in no sense sufficient to justify his conduct toward her; nor can the defendant's attitude in the matter be justified. His fatherly solicitude for Kenneth apparently blinded him to his faults and proved stronger than his affection for plaintiff.

Plaintiff is charged with having provoked the assaults. It is contended, among other things, that she refused to notify Kenneth of phone calls, did not permit him to "piece" between meals, objected to his reading newspapers and drinking milk, objected to his smoking in the house, accused him of lying and getting drunk, refused to let him use her typewriter and desk, flipped a dish towel at him, accused him of being a pansy, threw a glass of water in his face, etc. The truth of these allegations was not satisfactorily established. The trial court found, and we think correctly, that all of the disturbances were caused by Kenneth's conduct. We are also of the opinion that it was the duty of the defendant to protect plaintiff, rather than to encourage Kenneth in his treatment of her; that he did not discharge this duty of protection when he merely investigated and decided the merits. He should have taken positive steps to discipline Kenneth.

In the case of Doe v. Doe, 48 Utah 200, 158 P. 781, 786, it was held that inasmuch as the trial court had a better opportunity to test the credibility of witnesses and the weight of their testimony, specific findings on material issues on conflicting evidence will generaly be approved, unless so clearly against the weight of the

evidence as to show error. This case also approves the doctrine that a wife does not necessarily forfeit her right to alimony by conduct entitling the husband to a divorce. The court granted a decree of divorce to the husband with a liberal allowance to the wife by way of alimony. The Supreme Court modified the decree, reducing the allowance which, all things considered, was more generous than the allowance made by the trial court in this case. Furthermore, the court was called upon to make a comparison of the respective contentions of the parties, and in the course of the opinion observed:

"The adjudged cases show that courts, on the ground of cruelty, grant the wife a decree on much less evidence than they do the husband. That rests on sound principles, for acts and conduct on the part of a husband may well constitute cruelty to the wife causing her great mental distress, when similar acts and conduct on her part may not constitute cruelty to him, or cause him great mental distress. Before a decree is granted the husband on such ground, it ought to be a somewhat aggravated case."

It is thus apparent, even though the decree had been in favor of the defendant, there would have been no abuse of discretion in making a suitable allowance for the plaintiff, even if she were guilty as charged in the cross complaint. The cases reflecting the attitude of the courts in various jurisdictions are collected in 19 C. J. 244, 245.

The defendant's income is $285 per month. Plaintiff's income is $25 per month. Ordinarily an allowance of $50 alimony would be inadequate. Upon plaintiff's cross-appeal she asks that the allowance be increased to $95 per month. Considering, however, the comparatively short duration of the marriage and the probability that the plaintiff may be able to increase her independent income which, she testified, was reduced by reason of the marriage, we are of the opinion that the total amount of alimony should be fixed at the sum of $1,500, and when this amount has been paid the defendant should be relieved from payment of further sums of alimony. Plaintiff's at-

torney requests an additional allowance for services rendered upon appeal. We are of the opinion that he is entitled to an additional sum of $100 for such services.

The cause is remanded to the district court of Salt Lake county with directions to amend the decree in accordance with these views, and, as modified, the same is affirmed, with costs to respondent.

ELIAS HANSEN, C. J., and FOLLAND, and MOFFAT, JJ., concur.

EPHRAIM HANSON, Justice (concurring in result).

I am of the opinion that no alimony should be allowed after the date of this opinion.

WOLFE, J., being disqualified, did not participate herein.

Supplemental Opinion.

PER CURIAM.

The court's attention has been called to a misunderstanding between the parties as to the exact construction to be placed on the decision of this court with respect to alimony in this cause. We think the decision clear. In order to avoid any possible grounds for controversy, however, we now state the decision awards to the plaintiff the sum of $1,500 in full payment for all claims for alimony arising from and after the date fixed in the decree, to wit, December 26, 1934. When the defendant shall have paid to plaintiff the sum of $1,500 in installments of not less than $50 a month upon the judgment for alimony appealed from, such judgment may be satisfied. Attorney's fees and costs are not affected hereby.