188 P.2d 323

## MAUDLIN v. MAUDLIN.

### No. 7363.

Supreme Court of Idaho.

Jan. 2, 1948.

Frank D. Ryan, of Weiser, and Dunlap & Dunlap, of Caldwell, for appellant.

Smith & Ewing, of Caldwell, and Frank Kibler, of Nampa, for respondent.

MILLER, Justice.

January 13, 1937, Elizabeth Maudlin, the appellant herein, and Nathan B. Maudlin, the respondent, were married at Mountain Home, Idaho. August 10, 1944, appellant, as plaintiff, filed a complaint in the District Court of the Seventh Judicial District of Idaho in and for the County of Washington, and in which she sought a divorce, from respondent, under three separate causes of action, to wit, failure to provide, desertion and cruel treatment. The complaint shows that there are two children born of said marriage, to wit: Beverly Maudlin, a daughter, age five years and Bernard Maudlin, a son, age nine months, both of which children were with the plaintiff, and within the jurisdiction of the District Court of the Seventh Judicial District. November 25, 1944, the court having heard the testimony on behalf of the parties, found that the material allegations of the appellant's complaint were true and ordered, adjudged and decreed that the marriage is dissolved. It was further ordered, adjudged and decreed that the appellant have the care, custody and control of the minor children, Beverly Joan Maudlin and Bernard Nathan Maudlin, subject to the right of respondent to visit said children at reasonable times. It was ordered and adjudged that respondent pay appellant the sum of $50 per month on the 5th day of each month from and after the first day of December, 1944, until the further order of

the court, the same to be paid for the support and education of said minor children.

November 22, 1946, respondent filed a motion to modify the decree of divorce in which various reasons for modification are urged, to wit (1) that appellant has failed to care for, support, train and guide said children awarded to her; (2) that appellant has given up the custody of said children to her parents; (3) that appellant has entered into a written contract with respondent surrendering the possession of said children, and has shown no interest in their custody; (4) that appellant has shown herself unfit, neglectful and irresponsible in caring for said children; (5) that the continuance of the custody of said children in the hands of appellant would be irreparable harm to the personalities, characters and moral development of said children. December 6, 1946, an order was made and served on appellant, directing her to appear in the Seventh Judicial District Court, January 6, 1947, to show cause why that certain decree made and entered November 25, 1944, should not be modified.

February 21, 1947, the Hon. Thomas E. Buckner, District Judge, made and filed his findings of fact, conclusions of law and decree, and from which it is made to appear that the hearing on the motion to modify the decree came on for hearing January 6, 1947, appellant appearing in person and by counsel, and respondent in person and by his attorneys; that witnesses were sworn and examined and documentary evidence introduced by both parties, and the court having heard the testimony and examined the evidence and proofs offered by the parties, and being fully advised in the premises, finds the facts to be practically the same as the charges contained in the motion to modify the decree, with the added condition that the best interests and well being of Beverly Joan Maudlin and Bernard Nathan Maudlin require their removal from the custody and control of appellant and placed in the custody and control of respondent, a fit and proper person to have the care, custody and control of said children. The court concluded that the order of November 25, 1944, should be modified depriving appellant of the future care, custody and control of said children, and that respondent being a fit person, shall be granted the care, custody and control of said children, subject to the right of appellant to visit them at reasonable times and places, and the further order of this court. The decree granting change of custody of said minor children follows closely the findings and conclusions with an added provision that said children shall not be taken from the states of Oregon or Idaho, except temporarily for not to exceed two weeks, without the written permission of one of the judges of the Seventh Judicial District Court. February 25, 1947, an appeal was taken to this court from the order and decree of February 21, 1947, awarding the custody and control of said children to respondent.

March 1, 1947, appellant filed her Notice of Intention to Move for a New Trial. March 13, 1947, motion for new trial was dated, served March 14, 1947, and filed March 17, 1947. The motion for new trial seeks to have the order or decree of February 21, 1947, set aside and to grant a new trial on the following grounds:

(1) That the evidence is insufficient to justify the findings of fact and conclusions of law and decree in the following particulars:

(a) That the appellant, being the mother of said children and having remarried and established a good home, and was taking good care of said children, was more fitted to raise and rear said children and provide for their education than is the respondent; (b) that the evidence produced at said trial shows that the respondent's conduct was such as to make him an improper person to have the care and custody of said children; (c) that there was no evidence produced to justify the court in taking the custody of said children away from the appellant and giving such custody to the respondent; (d) that the evidence is insufficient to show that the appellant was not a fit and proper person to have the care and custody of said children; and the evidence establishes the fact that appellant has a good home, a good husband and good surroundings in which to rear and educate said children and that she is a fit and proper person so to do and the respondent by his conduct, as shown by the evidence, did not provide a decent home and environment in the care and upbringing of said children; (e) that there was an abusive discretion by the said court and the court was biased and prejudiced and the evidence was insufficient for the court to award the custody of said children to defendant, even though the court found that appellant was unfit to have the care and custody of said children when it appeared that respondent was unfit to have the care and custody of said children and that the grandparents of said children, Mr. and Mrs. John Oster, were people of excellent reputation and were willing to take the care and custody of said children and rear and bring them up in the proper way; (f) that it appears from the evidence that the welfare and best interest of said children would be served by placing their custody with the appellant and keeping said children away from the respondent; (g) that it clearly appears from the evidence that the respondent is not a fit and proper person to have the care and custody of said children.

(2) That the trial judge was biased and prejudiced in making and entering the findings, conclusions and decree and the same were not in accordance with the best interest of the children and did not promote their welfare and upbringing.

(3) That the trial court abused its discretion in refusing to place the custody of said children with the grandparents of appellant herein and that the best interest of said children for their welfare would be

best promoted by continuing the custody of said children with said grandparents.

Appellants motion for a new trial came on for hearing March 27, 1947. March 31, 1947, the court rendered its written opinion that said motion be denied and disallowed, which was filed April 8, 1947. May 3, 1947, appellant made and served notice of appeal from the order denying appellant's motion for a new trial, which was filed May 5, 1947. April 3, 1947, it was stipulated between the parties, that the decree granting change of custody of minor children made on or about February 21, 1947, and from which appellant filed a notice of appeal on or about February 25, 1947, and filed on or about February 28, 1947, and an order having been made and reporter's transcript now being in the course of preparation, it is further stipulated that said reporters transcript may be used by the parties hereto and by the court hearing this appeal on appellant's appeal from the order denying and overruling appellant's motion for a new trial, dated April 4, 1947, and filed April 8, 1947, for all purposes and to the same extent as though said transcript had been ordered and filed in connection with said appeal of said order overruling plaintiff's motion for a new trial, and it is further stipulated that defendant waives any right he may have to require the preparation and filing of another reporter's transcript in connection with said appeal from said order denying appellant's motion for a new trial, and it is further stipulated that the district judge and any justice of the supreme court may, upon the finding of this stipulation, make an order directing said reporter's transcript on appeal, when filed, shall be used by the parties hereto and by said courts, or, either of them, in connection with consideration of appellant's appeal from the order denying and overruling appellant's motion for a new trial.

The record, in this case, is voluminous and there is a sharp divergency therein. There are no questions involved that have not received the consideration of this court, as will later appear. The findings of the trial court show: "4. That since the entry of said Decree the plaintiff has attempted to enter into contracts with the defendant, agreeing to surrender the possession of said children to the defendant."

And, "5. That since the entry of said Decree the plaintiff has shown herself unfit, neglectful and irresponsible in caring for said children."

Respondent's Exhibit "A" dated June 3, 1946, admitted in evidence January 6, 1946, (1947) is a written agreement, duly acknowledged, between the parties hereto for a change of the custody of Beverly Joan Maudlin from appellant to respondent for a period of one year from date thereof. The respondent was asked if immediately prior to the signing of said exhibit, appellant requested that he pay her the sum of $500 for the signing thereof. In answer to the inquiry he stated: "She drove up to the station where I worked on the cars,

got out and came over and said she wanted to talk to me. She then asked me if I wanted my little girl. I told her I did. She said I could have her for $500. I was a little bit floored at that, and asked her if she would sign legal papers binding this agreement if I paid her the $500. She said she would. I told her I would think it over, and she went home."

The record shows that said respondent did not pay said $500.

Respondent's Exhibit "B" dated June 29, 1946, is very similar to that of Exhibit "A" and in which appellant agreed to surrender the custody of Bernard Nathan Maudlin for a period of nine months from the date thereof. We find no testimony in the record to the effect that there was to be any money consideration for the surrender of the custody of said minor child. When Mrs. Frisbee, a witness for respondent, testified that she was with appellant when she went to see respondent to get the money for the keep of the children, appellant told Mrs. Frisbee she had made up her mind to let Nathan have the little girl. She said "I am going to sell her to Nathan for $500 and then I will have enough money to complete my beauty course." She said he wants the children anyway. Further being questioned about said matter she testified, that appellant was a great hand to use profane language; "it was in her make-up; it was her habit." She testified that appellant in speaking of Beverly said, "I just hate that G—d D—m brat." When

asked about appellant's general reputation in the neighborhood where she lived and where Mrs. Frisbee lived, stated it was plenty bad, "If hearsay has anything to do with it."

The appellant when asked how she came to enter into the contracts, Exhibits "A" and "B" for respondent to have temporary custody of the children stated, that respondent had told her that he had been down to her parents and that he had found out that they were trying to take the children away from her and suggested that she go down and see Mr. Welker. The next morning Mr. Welker called and she went to his office and he told her that respondent wanted Beverly and that they would have to come to some agreement or go into court to settle it. At that time she intended to take a beauty course, so she let respondent have Beverly for a period of one year. She testified: "There was nothing said about $500."

When Mrs. Frisbee's testimony was mentioned, she said: "I always had my own money. I didn't need any money for anything and I never said that.

"Q. You never offered to sell her for $500? A. No.

"Q. Did you ever receive any $500, or any part of it? A. Never received anything except the $50 a month for the support of the children."

It would seem strange that appellant entered into the contracts evidenced by Ex-

hibits "A" and "B" for the surrender of the custody of the children, if she did not expect some monetary consideration from respondent. Her parents had had the custody of the children and apparently were willing to continue to keep them. Her parents, seemingly, were very reputable citizens and financially able, testified that they were willing to take the children and care for them the same as though they were their own. There was considerable testimony to the effect that Beverly was getting nervous and that the habits of Bernard plainly indicated that his training had been neglected. During the time respondent lived at New Plymouth, and while he had the custody of said minor children, Alvin Johnson, in a part of whose house respondent lived, testified that it wasn't long until he noticed a marked improvement in the conduct of said children. He also testified that the general reputation of appellant for morality and sobriety was bad. His wife testified in substance, as had her husband.

Ruby Hanson, who lived just across the garden fence from the Johnsons, saw the children practically every day and noted the improved conditions and that the condition of the home was very good.

Mr. Frisbee testified that at the time appellant lived at the Carter home in a trailer house that "her conduct was very nice and she seemed like a perfect lady." That he had never noticed or heard of any unseemly conduct on her part or of her having men in the trailer house at the time she lived there. Both of the children were there occasionally and stayed with her, "Just on a visit. They seemed to be very nice. She had lots of affection for them and they for her." That he had never seen any drinking of intoxicating liquor while appellant was around.

Appellant testified quite at length as to acts and conduct of respondent prior to the divorce proceeding. Such incidents were wholly immaterial. They were admissible in the divorce proceeding either in support or resistance of such action. The instant proceeding had nothing to do with the marital status, but is for the purpose of determining the fitness or want of fitness of the parties relative to the care, custody and education of the children of the marriage. No legal significance attaches to Exhibits "A" and "B". All that can be said concerning them is that they disclosed a willingness on the part of appellant to surrender the care, custody and education of the children awarded her in the decree of divorce to another. I find no action of the trial court in the divorce proceeding sanctioning the modification of the decree or a surrender of the care, custody and education of said minors to respondent. Nor, could there be, until such time as an application was filed showing a material, permanent and substantial change in circumstances and conditions of the parties since the date of the original decree and the awarding of the children

involved. In actions for divorce the direction for the care, custody and education of the child of the marriage (Sec. 31-705, I.C.A.) remains in the trial court and, it may, at any time modify an order relative to the care, custody and education of such child or children, whenever it appears for the best interest and welfare of such child or children. In construing such statute, this court has repeatedly held that the disposition of the care and custody of the child, in the first instance, is committed to the discretion of the trial court and unless such discretion is abused, and there is substantial evidence supporting a judgment, the judgment of the trial court will not be disturbed. It is likewise well settled, in this jurisdiction, that the welfare and best interest of a minor is of paramount consideration. Fish v. Fish, 67 Idaho 78, 170 P.2d 802; Roosma v. Moots, 62 Idaho 450, 112 P.2d 1000, 1003.

In the case of Roosma v. Moots, supra it is said: "It is well-settled in this state that 'in cases of this character' the welfare and best interest of a minor child 'is the paramount consideration' and that the 'child's welfare as a normal human being and future citizen is the polar star by which the court must be guided in awarding its custody.' Kirkpatrick v. Kirkpatrick, 52 Idaho 27, 10 P.2d 1057; Kreiger v. Krieger, 59 Idaho 301, 81 P.2d 1081, 1083; Sauvageau v. Sauvageau, 59 Idaho 190, 81 P.2d 731; Piatt v. Piatt, supra [32 Idaho 407, 184 P. 470]; Keyes v. Keyes, 51 Idaho 670, 9 P.2d 804, 806; Cornelison v. Cornelison, 53 Idaho 266, 23 P.2d 252."

Appellant contends throughout her brief that the court abused its discretion in the order changing the custody of the children from the mother to the father because of their tender age; the girl at that time being seven years and the boy three years old; that the court in making the order for the change of custody disregarded the evidence that plaintiff was living an exemplary life, had an adequate home and financial ability to rear and care for and educate said children; that the court erred in modifying the divorce decree for the reason that it does not appear from the evidence that the mother was unfit to longer have the custody of the children; that the court erred in changing the custody of the children for the reason that appellant had left these children with her mother during the period of time disclosed by the court evidence; that the court erred in changing the custody of the children from appellant to respondent on the finding that appellant had attempted to enter into contract with the respondent agreeing to surrender the possession of said children to respondent; that the court erred in not considering that the children's welfare would be best served by awarding their custody to Mr. and Mrs. Oster, their grandparents, who had virtually raised said children and who were financially able to continue their custody and control as testified to by them.

Under appellant's "Points and Authorities" only five cases, one not of this jurisdiction, are cited. We see nothing therein that would even remotely indicate that there was an abuse of discretion of the trial court in modifying the decree of divorce and awarding the custody of the children to respondent. One of said authorities is Kirkpatrick v. Kirkpatrick, supra, and, in which, it quotes with approval from the case of Olson v. Olson, 47 Idaho 374, 276 P. 34, that "awarding the custody of a child of tender years to its father, rather than to its mother, on evidence that the father is better fitted to care for and educate it, does not constitute an abuse of discretion." [52 Idaho 27, 10 P.2d 1058]

In the Olson case, supra [47 Idaho 374, 276 P. 35], it is also said: "Irrespective of the wishes of the parents * * * the welfare of the child is the matter of utmost importance. The trial judge saw the father and the mother; he observed their demeanor and heard them testify; and, from his position of vantage, decided that the best interests of the child would be served by awarding its care and custody to the father. Under such circumstances, we are asked to set aside the trial court's decision and award the child to its mother. Now, it is well settled that an appellate court will set aside such an award only when the trial court has manifestly abused its discretion. Donaldson v. Donaldson, supra [31 Idaho 180, 170 P. 94]; Damm v. Damm, 82 Mont. 239, 266 P. 410."

In the case of Ruthruff v. Ruthruff, 52 Idaho 330, 14 P.2d 958, an authority cited by appellant, and in which the father applied for modification of a decree of divorce and sought the sole custody and care of a child 4½ years old and which application the court granted, it is said:

"The best interest of the child in such proceedings are of paramount importance, though to modify an award of a child of tender years to the mother, it must appear that conditions have changed and that the mother is unfit to longer have the custody of the child. Kirkpatrick v. Kirkpatrick, supra. This does not necessarily mean morally unfit, as there are many elements of unfitness which may be considered.

"There is not only a conflict in the evidence, but different conclusions could reasonably be drawn therefrom, and divergent plausible arguments based thereon; but from a careful examination of the testimony pro and con, we are satisfied there is sufficient evidence to sustain the modification, and the judgment is therefore affirmed."

In the case of Krieger v. Krieger, supra, another of appellant's citations, and which shows that Mrs. Krieger, appellant, obtained a decree of divorce from Mr. Krieger, respondent, and that the minor child of the parties was awarded to respondent. Subsequently a motion was made

for modification of the decree and at the hearing the decree was amended by providing that the plaintiff, Mrs. Krieger [59 Idaho 301, 81 P.2d 1082], "may visit said minor child at the home of said defendant (Mr. Krieger) at any reasonable time or hour," from which order an appeal was prosecuted. The trial court found, as a conclusion of law, "that plaintiff is not a fit and proper person to have the care and custody of the minor child of the parties" and further found as a conclusion of law "that defendant, Bennie P. Krieger, is entitled to retain the absolute care, and custody of said minor child of the said parties." This court held, "neither the findings of fact, nor the evidence adduced supports either of these conclusions." This court further held, "It is the established rule of this court, and other courts as well, that all other considerations being equal, a child of tender age or a girl of even more mature years can and will be reared, trained and cared for best by its mother. This conclusion needs no argument to support it because it arises out of the very nature and instincts of motherhood; nature has ordained it. * * * In the case before us it may be safely asserted that the record shows both these parties are honest, industrious and well behaved."

The case of Donaldson v. Donaldson, 31 Idaho 180, 170 P. 94, 96, it is said: "The appellant assigns as error the action of the court in awarding the custody of George M. Donaldson, one of the minor children,

to the respondent, and in awarding her $40 per month for his support until he shall have obtained his majority. The question as to the disposition of children and allowance of alimony in divorce actions is in the first instance committed to the discretion of the trial court. In this case it does not appear that such discretion has been abused, and that part of the judgment will not be disturbed."

The grounds of motion for a new trial have heretofore been stated fully. We think said motion was properly denied and, disallowed. We have carefully examined appellant's brief for some reference incident to said motion, but find nothing therein which would indicate that appellant was urging its consideration. In fact it was not mentioned either in the brief or oral argument before this court. Accordingly, we must conclude that the presentation thereof was abandoned.

The statute (31-705, I.C.A.) authorizes the modification of a former decree awarding the care, custody and education of the minor children, and, unless, there is an abuse of discretion, and, absence of substantial evidence supporting the finding, this court may not interfere. In this case the evidence and testimony adduced abundantly supports the judgment and decree of the trial court modifying the decree of divorce, and awarding the care, custody and education of the children of the marriage to respondent.

The judgment and decree of the trial court modifying the decree of divorce awarding custody of the children to respondent, and the order denying appellant's motion for a new trial are affirmed.

Costs to respondent.

BUDGE, C. J., and GIVENS and HYATT, JJ., concur.

HOLDEN, J., did not participate.