H. W. KELLER, Appellant, v. JULIA KELLER, Appellee and cross-appellant.

No. 47178.

(Reported in 31 N. W. 2d 343)

MARCH 9, 1948.

REHEARING DENIED MAY 7, 1948.

W. J. Hayek, of Iowa City, and Hansen & Wheatcraft, of Des Moines, for appellant.

Herrick, Sloan & Langdon, of Des Moines, for appellee and cross-appellant.

OLIVER, J.—The parties were married in 1938. Dr. Keller was then forty-three years old. Mrs. Keller was several years younger and had been previously married and divorced. There are no children. He was a practicing dentist in Des Moines. She had been employed in office work of some kind and worked for various employers most of the time thereafter. Her earnings prior to 1946 were not shown. That year they were about $200 per month.

When married they moved into a home constructed by Dr. Keller at a cost of $8,100. At that time she had some furniture, upon which she owed about $1,800. From her subsequent earnings she paid this and bought the other furniture and the carpets used in the home. She owned also a Chrysler automobile, mortgaged for $300. Dr. Keller applied this on a Packard he purchased from her. His assets consisted of the home, another house on Carpenter Avenue, Des Moines, a 39-acre tract of land, an 80-acre tract in his name (in which he had agreed to give his mother a life estate), a $7,500 mortgage upon property owned by his mother from which he had received no interest, a substantial amount of life and endowment insurance, a Buick automobile, dentist's equipment and several other items.

The parties executed an antenuptial agreement that neither should share in the property or estate of the other. Dr. Keller testified one reason for this was the protection of his mother's interest in the 80-acre tract. He was giving his mother about $25 per month to assist in her support and had named her as beneficiary in his life insurance policies. After the marriage he secured some additional insurance in which he named his wife as beneficiary. The premiums on his insurance exceeded $1,000 per year.

There was evidence (denied by Mrs. Keller) that on a number of occasions during the first two and one-half years of their married life she used abusive and profane language toward her husband and so constantly belittled him in the presence of friends that some of them discontinued going to the Keller home. On one occasion when his sister was present,

she berated Dr. Keller with curses and vile epithets and struck him in the face. Mrs. Keller testified there was an argument "and Doctor grabbed me by the nape of the neck and I slapped him." The sister did not again call at the Keller home. Dr. Keller testified Mrs. Keller threatened him with a pistol shortly thereafter; that he consulted an attorney about a divorce and prepared to leave home, but remained because Mrs. Keller pleaded with him and promised she would behave. At one time Dr. Keller published a notice that he would not be responsible for debts other than his own. He testified this was because she permitted her friends to charge purchases to him.

Dr. Keller was a dental officer in the National Guard. Early in 1941 he was called into service. He was stationed in various places in Texas and temporarily in Pennsylvania and Louisiana. He served as Major and Lieutenant Colonel and was discharged in 1947 with the rank of Colonel. During this period she worked for the government at Camp Leonard Wood, Missouri, and Pine Bluff, Arkansas, until early in 1943. Thereafter she worked at Camp Dodge and Fort Des Moines and lived in the home. Dr. Keller came home several times for a few days and Mrs. Keller paid him a few short visits. She testified they last lived together as husband and wife in February 1945. When she was living in Des Moines she paid his insurance premiums, taxes, bills for light and heat, etc., from money he sent her. She complained he did not send enough money to support her.

About 1944 Mrs. Keller wrote a letter to the district office. It was forwarded to Dr. Keller's commanding officer. He put Dr. Keller "on the carpet" and required him to produce canceled checks showing remittances to his wife. He testified he suffered considerable military embarrassment, that it was a permanent blot on his military record and hindered his promotion and the worry therefrom caused a breakdown which required his hospitalization for seven months. Before he went to the hospital he wrote her "if you are going to do things like that the best thing for us to do is to get a divorce." He wrote her several times he was never happy nor satisfied with marriage, and apparently she also expressed some dissatisfaction. He com-

plained to her that her talking about him had hurt him and he hesitated to re-enter practice in Des Moines with that handicap.

The record does not show how much he sent or gave her the first four years he was in the army. Apparently both lived comfortably. He testified, "She got all that I had other than my necessary expenses." He produced canceled checks to her for $2,150 for 1945. Her accounts for the first half of 1946 show receipts from him of $1,713.50 and disbursements for his personal expenses, insurance, state and federal income taxes, property taxes, insurance on home, and office rent of $1,413.69. Later she drew $200 per month as temporary alimony.

Shortly after he went to Texas she had loaned him $800 to apply on the purchase price of an automobile for himself. He repaid this with $100 extra for interest. Subsequently she received $2,500 from the sale of his property on Carpenter Avenue. About July 1946 she used $1,800 of this to buy an automobile which she placed in her brother's name. She complained to Dr. Keller, "I should have been able to save every penny that I have made since working for the Government." At the time of the trial she had about $3,500 in cash and bonds.

Dr. Keller testified she several times canceled arrangements to visit him. "I thought it was kind of funny." In June 1946 information he received "led me to suspect that something wasn't just exactly right in my home." He employed an investigator to watch the home. Apparently she became aware of this surveillance. In September 1946 she went to San Antonio, Texas, to see Dr. Keller. He charged her with entertaining a certain man in the home. She denied any improper conduct. He rejected her explanation and brought this suit.

Dr. Keller testified the difficulties with his wife caused him such worry and discouragement that he was unable to sleep, lost his appetite and was again hospitalized. In November 1946 he secured a leave and returned to Des Moines. In the garage at the home he found his wife's automobile and that of a male friend of hers. He entered the house and required the man to pack his bags and depart. He did not see his wife who testified she had rented the home to this man while she visited her brother in Charles City.

A witness testified Mrs. Keller had referred to this man as "her baby" and had said he was "crazy about her" and that she had twice taken him to call upon her brother who had approved of him. According to the witness Mrs. Keller had been interested previously in another man. Mrs. Keller "made a remark that both of them drank too much, but I don't recall if she had said why they had broken up." Mrs. Keller contradicted this testimony and much of the testimony of the man employed by Dr. Keller who had watched the home various evenings in the summer of 1946. She testified others were present at the parties held there and her friendship for these men was merely casual.

■■ I. Space does not permit reference to other details shown in the record. The case turns upon questions of fact upon which the evidence is in sharp conflict. The trial court saw and heard the witnesses. We have frequently pointed out that in no other class of cases is the personal presence of the parties and their witnesses in court of more value in weighing the testimony. Though such cases are triable de novo, upon appeal, the decision of the trial court upon disputed questions of fact is entitled to much weight. Robbins v. Robbins, 234 Iowa 650, 12 N. W. 2d 564, and citations therein. In the case at bar the trial court awarded the husband a divorce on the ground of cruel and inhuman treatment. Viewed in the light of the foregoing rule, the record leads us to conclude this was correct.

■ II. The court awarded the home to Mrs. Keller as alimony. Mrs. Keller was ordered to pay Dr. Keller $1,000 from the proceeds of the sale of the Carpenter Avenue property and to deliver to him $600 of United States bonds purchased by him while in the military service.

Dr. Keller contends the award of any alimony was erroneous. His attorneys refer to the rule that "where a divorce is granted the husband, on the ground of the adultery of the wife, she is not entitled to alimony out of the husband's estate" except perhaps "where the husband had acquired property by the wife, or she had been the meritorious cause of it, by a comparative lifetime of industry or otherwise, and he was not without fault as respects her crime." Fivecoat v. Fivecoat, 32

Iowa 198, 199; Coulthard v. Coulthard, 91 Iowa 742, 60 N. W. 213; Mitchell v. Mitchell, 193 Iowa 153, 185 N. W. 62. That rule is not applicable here. Adultery was not pleaded and the divorce was not granted upon that ground. There was no finding of adultery by the trial court. Nor do we so find.

We agree with the trial court that, although the husband was granted the divorce, this is a proper case for an award of alimony to the wife. Prior to the marriage Dr. Keller had required his wife-to-be to execute an agreement which barred her from any share in his estate. He had a substantial estate. She had little. He had no dependents save his partly dependent mother. Apparently Mrs. Keller had some feeling of financial insecurity.

Later when he was in the service in Texas he discouraged her suggestions that she come there to live. His position was that living conditions would be difficult, expenses beyond their means, and it would be foolish for them to pay rent and leave their Des Moines home vacant. This may have been sound from a strict business standpoint, but it doubtless tended to induce Mrs. Keller to believe her propinquity was not of great moment to him. Under the circumstances it is not surprising that they grew farther apart and she turned to others for companionship. Although his acts did not excuse her conduct, he was not entirely free from blame for the marital collapse.

During the marriage Mrs. Keller paid her furniture bill. At the time of the trial she had accumulated $3,500 in cash and bonds and a new automobile. Dr. Keller owned the home and the two tracts of land. The Carpenter Avenue property had been sold for $2,500 and Mrs. Keller had taken the proceeds. Inflation had increased the value of the home to $15,000. The value of Dr. Keller's insurance had increased $12,000. To some extent the earnings of Mrs. Keller, by which she partly supported herself, indirectly contributed to the increased value of Dr. Keller's insurance holdings.

The net worth of Dr. Keller was estimated at $60,000 or $65,000. Dr. Keller asserted his health was impaired. Mrs. Keller testified she was unwell. Perhaps the health of both will be improved by the termination of this litigation.

The home awarded Mrs. Keller by the trial court constitutes almost one fourth of Dr. Keller's property. In Mitchell v. Mitchell, 193 Iowa 153, 185 N. W. 62, an award to a guilty wife of $7,500 from her husband's $50,000 estate was held excessive and reduced to $3,000. In Blain v. Blain, 200 Iowa 910, 205 N. W. 785, the worth of the husband was $20,000, of the wife $10,000. An award of $5,000 alimony was reduced to $1,200. In accordance with these precedents we conclude Mrs. Keller's award of alimony should be fixed at $5,000, that Dr. Keller should retain the home, and that Mrs. Keller should not be required to repay Dr. Keller any part of the proceeds of the sale of the Carpenter Avenue property. The cause is remanded for modification of the judgment accordingly. In all other respects the judgment and decree are affirmed. The costs upon appeal are ordered taxed against Mrs. Keller.—Modified, affirmed and remanded.

MULRONEY, C. J., and BLISS, HALE, GARFIELD, MANTZ, SMITH, and HAYS, JJ., concur.