311 P.2d 756

**Robert E. GOOD, Plaintiff-Appellant,**

**v.**

**Lorraine M. GOOD, Defendant-Respondent.**

No. 8526.

Supreme Court of Idaho.

May 28, 1957.

Anderson & Anderson, Pocatello, Anderson & Beebe, Blackfoot, for appellant.

H. William Furchner, Blackfoot, for respondent.

TAYLOR, Justice.

Plaintiff (appellant) was granted a divorce from defendant (respondent) May 24, 1955, upon the ground of extreme cruelty. The custody of the two children of the parties, a girl four years of age and a boy less than two years of age, was awarded to the plaintiff for the period of one year from the date of the decree, during which time the children were to remain within Bingham County, Idaho, in the actual care and control of their paternal grandparents. This temporary arrangement was made because of the fact that plaintiff was an officer in the United States army stationed abroad and would not be in a position to personally exercise custody, and "that defendant, though a proper person to have the care and custody of said minor children, is not presently fit to have full time custody of said minor children by reason of emotional instability resulting from her recent recovery from a serious mental illness and the possibility of a recurrence thereof". The decree further provided that the defendant should have temporary custody of the children on Saturdays and Sundays during the one-year period, and that at the end of the year the defendant should have the exclusive custody of the children with right of visitation in plaintiff. The decree also provided that during the one-year period the defendant should submit herself for "out-patient interview and examination to the medical and psychiatric staff at the State Hospital South, Blackfoot". It appears from the record that defendant had suffered a mental upset or near nervous breakdown, from which she had for the most part recovered at the time of the trial.

During the year following the decree the defendant complied with its requirements and also attended the Idaho State College at Pocatello, where she took training to qualify herself for teaching and secretarial work, and the children remained in the custody of the paternal grandparents at Blackfoot.

On May 22, 1956, just a few days prior to the time defendant would have been entitled to the custody by the terms of the decree, plaintiff filed a motion for an order of the court eliminating from the decree the provision requiring plaintiff to pay to defendant $100 per month as alimony for her support, and for an order restraining defendant from removing the children "from the Sixth Judicial District of the State of Idaho". The motion was supported by the affidavit of the paternal grandmother, in which she alleges that it is the purpose of the defendant to take the

children from the state of Idaho to the state of California, and thus to deprive the plaintiff of the right of visitation and contact with the children. In her counteraffidavit, defendant alleges her intention to take the children to California; that she has friends and relatives there who will assist her in securing more profitable employment than she can secure in Idaho; and that plaintiff is a permanent career officer in the United States army; that he will be absent from Idaho continuously except for periods of leave, and that he can as well see and visit the children in California on such occasions as he could do in Idaho. Defendant also by motion on her part sought an order modifying the decree by increasing the amount provided therein for support of the children from $37.50 to $87.50 per month for each child.

After hearing the testimony offered by the parties, the court denied both motions. The court found that the defendant "is mentally and emotionally stable and capable of handling her own affairs and those of the minor children, and it would seem that there would be no real basis for making permanent a restraining order requiring the defendant to keep the children in the State of Idaho. * * * That the plaintiff is presently in the United States Army stationed in Korea as a regular officer of the Army and that he will continue to remain in the armed forces of the United States indefinitely; that it is necessary for defendant to secure employment in order to adequately support herself and the minor children of the parties and that she will have greater opportunities for securing employment if she is permitted to take the children with her to other places where employment may be secured, some of which may be outside the State of Idaho; that the plaintiff's rights of visitation will not be impaired by removal of the children from Idaho and that there is no substantial reason to require that said children be kept in Idaho." We find no error or abuse of discretion in the denial of plaintiff's request that defendant be restrained from removing the children from the state. Roosma v. Moots, 62 Idaho 450, 112 P.2d 1000; Holden v. Holden, 63 Idaho 70, 116 P.2d 1003; Duncan v. Duncan, 293 Ky. 762, 170 S.W. 2d 22, 154 A.L.R. 549, annotation 552; Annotation 15 A.L.R.2d 432.

The decree contains no restriction requiring defendant to keep the children within the state. No substantial change in conditions was shown to warrant modification of the decree in that respect. Fish v. Fish, 67 Idaho 78, 170 P.2d 802; Maudlin v. Maudlin, 68 Idaho 64, 188 P.2d 323; Thurman v. Thurman, 73 Idaho 122, 245 P.2d 810, 32 A.L.R.2d 996; Wilson v. Wilson, 73 Idaho 326, 252 P.2d 197; Wenzel v. Wenzel, 76 Idaho 7, 276 P.2d 485.

As the basis of its order denying plaintiff's motion to eliminate the provisions for permanent alimony, the court said:

"That though the decree of divorce in this action was awarded to the plain-

tiff it is based upon the finding of the Court that the said parties were mentally and emotionally opposites and their being married to each other resulted in a nervous breakdown on the part of defendant which was not an act of guilt on her part and that it was for the best interests physically and mentally of both parties that a divorce be awarded, and the defendant was and is entitled to the alimony provided by the decree herein to which provision plaintiff agreed at the time of making thereof."

In denying defendant's motion for an increase in the amount ordered for support of the children, the court said:

"* * * the motion of the defendant be and the same is hereby denied, taking into consideration the action taken by the court on the plaintiff's motion."

From this it appears that the court based its denial of an increase of support for the children in part upon its conclusion that plaintiff should be required to pay defendant $100 per month permanent alimony.

In support of his motion to eliminate the award of alimony, plaintiff urges that permanent alimony cannot be allowed to the wife in a case where the divorce is granted to the husband, and relies upon the statute, which is as follows:

"Where a divorce is granted for an offense of the husband, including a divorce granted upon the husband's complaint, based upon separation without cohabitation for five years, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support as the court may deem just, having regard to the circumstances of the parties respectively; and the court may, from time to time, modify its orders in these respects." § 32–706, I.C.

Plaintiff cites several California cases holding under a similar statute that the court has no jurisdiction to allow permanent alimony to the wife where the divorce is granted to the husband for fault of the wife. The latest of the cited cases is, McLaughlin v. Superior Court, 128 Cal.App.2d 62, 274 P.2d 745.

■ The rule denying alimony in such cases appears to be based in part upon the reasoning that since the common law permitted no alimony to either party in any case, the statute was enacted to change the rule and allow alimony in cases where the divorce is granted for an offense of the husband, impliedly leaving the rule of the common law to govern in cases where the divorce is granted for an offense of the wife. Assuming such reasoning is good, it does not follow that the rule of the common law must forever remain fixed and unyielding in all cases and under all circumstances. The

contention ignores or denies one of the basic virtues of the common law system. The common law is not immutable. It is a flexible legal system capable of expansion and change necessary to meet new and changed problems and conditions, or to meet a new or altered public policy evolving from such changed conditions in an expanding and developing social order.

"'This flexibility and capacity for growth and adaptation is the peculiar boast and excellence of the common law.' * * *

"To concede this capacity for growth and change in the common law by drawing 'its inspiration from every fountain of justice,' and at the same time to say that the courts of this country are forever bound to perpetuate such of its rules as, by every reasonable test, are found to be neither wise nor just, because we have once adopted them as suited to our situation and institutions at a particular time, is to deny to the common law in the place of its adoption a 'flexibility and capacity for growth and adaptation' which was 'the peculiar boast and excellence' of the system in the place of its origin.

"* * * It has been said so often as to have become axiomatic that the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions." Funk v. United States, 290 U.S. 371, 54 S.Ct.

212, at page 216, 78 L.Ed. 369, 93 A.L.R. 1136, at pages 1142–1143.

In the Funk case it was recognized that "The public policy of one generation may not, under changed conditions, be the public policy of another." 93 A.L.R. 1136, syllabus 2. The Supreme Court refused to recognize the common law rule that the wife of one on trial for a criminal offense is not a competent witness on his behalf, even though congress had not acted to change or modify the rule.

"'The rules so deduced from this system, however, were continually changing and expanding with the progress of society in the application of this system to more diversified circumstances and under more advanced periods. The common law by its own principles adapted itself to varying conditions and modified its own rules so as to serve the ends of justice as prompted by a course of reasoning which was guided by these generally accepted truths. One of its oldest maxims was that where the reason of a rule ceased the rule also ceased, and it logically followed that when it occurred to the courts that a particular rule had never been founded upon reason, and that no reason existed in support thereof, that rule likewise ceased, and perhaps another sprang up in its place which was based upon reason and justice as then conceived. No rule of the common law could survive the reason on which

it was founded. It needed no statute to to change it but abrogated itself. [Ketelsen v. Stiltz, 184 Ind. 702, 707, 111 N.E. 423, L.R.A.1918D, 303, Ann.Cas. 1918A, 965]' ". Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, at page 216, 78 L.Ed. 369, 93 A.L.R. 1136, at page 1143.

After referring to the statute, § 73–116, I.C., adopting the common law as the rule of decision in this state, this court, in Northern Pacific Ry. Co. v. Hirzel, 29 Idaho 438, at pages 453–454, 161 P. 854, at page 858, said:

"By the adoption of that section this state did not adopt the common law of England when such common law was inapplicable to the conditions of the state. The territory and state of Idaho, following the lead of other states having similar statutory provisions, only adopted such provisions of the common law as were applicable to the conditions of the state."

█ The development in this state of the relative importance of the position of the wife in the marital relationship, in property rights, and in rights attendant upon dissolution of the marriage, has frequently been referred to in the decisions and texts. The position of the wife in Idaho at the present time is a far cry from what it was at common law. Originally under that system the very identity of the wife was merged in that of the husband. She had practically no rights which she could exercise independently of him. At the present time in this state, except as to the control and management of the community property, her position and her rights are on a plane of equality with the husband. Cf. Anderson v. Idaho Mutual Benefit Association, 77 Idaho 373, 292 P.2d 760. That is now the established public policy of this state. A rule of the common law in conflict with public policy cannot be recognized. Funk v. U. S., supra.

Moreover, the legislature has declared "that in all matters not regulated by this code, in which there is any conflict or variance between the rules of equity jurisprudence and the rules of the common law, with reference to the same matter, the rules of equity shall prevail." § R5–101, I.C. Courts have quite universally recognized the inequity and injustice of turning a wife out destitute to become an object of charity in cases where the husband, who obtains the divorce, is amply able to provide for her support, and where she has no means or ability to provide for herself, solely on the ground that she has by her conduct provided the grounds for divorce. Annotation, 34 A.L.R.2d 313.

Some of the states having statutes similar to our own have refused to recognize or apply the common law rule against alimony to the wife in such cases. In Georgia the statute provides:

"If the jury, on the second or final verdict, find in favor of the wife, they shall also, in providing permanent alimony for her, specify what amount the minor children shall be entitled to for their permanent support, * * *."
§ 2462, Civil Code 1895.

If appellant's construction were applied this would limit alimony to cases in which the jury finds in favor of the wife, but the Georgia court in Davis v. Davis, 134 Ga. 804, 68 S.E. 594, 30 L.R.A.,N.S., 73, a case in which the husband was granted a divorce on the ground of the wife's desertion, held that it was error on the part of the trial judge to rule as a matter of law that if the jury found for the husband on the issue of desertion, it could not allow alimony to the wife. The court further said:

"In this case the evidence of the wife tended to show bad conduct on the part of the husband; that she had always helped support the family by sewing; that her eyesight was failing, and her health was becoming so poor that she was scarcely able to do any work, and was not able to support herself without assistance." Davis v. Davis, 134 Ga. 804, 68 S.E. 594, at page 597.

In Iowa, where the statute provides that the guilty party forfeits all rights acquired by the marriage, the court held nevertheless that the wife was entitled to alimony although the husband was given a divorce on the ground of cruelty, but where he was not entirely free from blame for the marital collapse, and she had helped build up his estate. Keller v. Keller, 239 Iowa 687, 31 N.W.2d 343.

Similarly Utah, having a statute declaring that the guilty party forfeits all rights acquired by the marriage, holds that the wife does not necessarily forfeit her right to alimony by conduct entitling the husband to divorce. Doe v. Doe, 48 Utah 200, 158 P. 781; Schuster v. Schuster, 88 Utah 257, 53 P.2d 428; Alldredge v. Alldredge, 119 Utah 504, 229 P.2d 681, 34 A.L.R.2d 305; MacDonald v. MacDonald, 120 Utah 573, 236 P.2d 1066. In the Alldredge case the Utah court said:

"There is no evidence that the wife has any separate income, and since she is 53 years of age it does not seem likely that she would be able to support herself. Furthermore, there is evidence in the case that she is in ill health. Alimony in this case is necessary to prevent her from becoming destitute. The wife's conduct in this case has by no means been so outrageous so as to cause a forfeiture of alimony." Alldredge v. Alldredge, 119 Utah 504, 229 P.2d 681, at page 686, 34 A.L.R.2d 305, at page 311.

And in the MacDonald case:

"She makes the valid contention that where there are sufficient assets and income to do so, she is entitled to be pro-

vided for according to her station in life and as demanded by her condition of health and lack of ability to work; that she should not be cast aside in her helpless condition to 'sink or swim' or depend on others." MacDonald v. Mac-Donald, 120 Utah 573, 236 P.2d 1066, at page 1069.

The Oklahoma statute is to the effect that when a divorce is granted by reason of the fault or aggression of the husband, the wife shall be allowed such alimony as the court may think reasonable. This is in effect the same as ours. The Oklahoma court has repeatedly held that under this statute the wife is not entitled to alimony as a matter of right when the divorce is granted to the husband, but that the court may nevertheless in its discretion award alimony in such case. Newman v. Newman, 144 Okl. 160, 290 P. 179; Flaxman v. Flaxman, 177 Okl. 28, 57 P.2d 819; Whitehorn v. Whitehorn, 178 Okl. 633, 64 P.2d 299; Haynes v. Haynes, 190 Okl, 596, 126 P.2d 65; Chilton v. Chilton, 207 Okl. 647, 252 P.2d 121. In the Newman case the court said:

"Under our statutes, as well as the majority of the statutes of other states, where a divorce is granted the husband because of the faults of the wife, she is not as a matter of right entitled to alimony out of the husband's estate, but it is discretionary with the court to a very considerable extent, when the property of the husband will justify it, to allow her alimony in such amount

or amounts as not to leave her destitute or a charge upon society. This rule rests upon a humanitarian reason, and also upon the further reason that in many instances the wife assists in the accumulation of the property of the husband acquired during their marriage." Newman v. Newman, 144 Okl. 160, 290 P. 179, at page 180.

And in the Flaxman case:

"At common law a wife could not obtain alimony when a divorce was granted by reason of her own misconduct. The harshness of the rule has caused it to be abandoned in many states. In most instances the change has been effected by statute. See 1 R.C.L. p. 936. But in this state the same change has been effected by judicial development and pronounced independent of statutory enactment. This court has declared that permanent alimony sufficient to prevent a wife from becoming destitute may be allowed by the court granting a divorce, even though the divorce is granted upon the request of the husband and by reason of the fault of the wife." Flaxman v. Flaxman, 177 Okl. 28, 57 P.2d 819.

California has relaxed its rule to the extent of holding that the wife may be allowed alimony even though she be guilty of adultery, for which a divorce is granted the husband, in a case where she was also

granted a divorce from the husband on the ground of extreme cruelty. Mueller v. Mueller, 44 Cal.2d 527, 282 P.2d 869. In that case the supreme court of California said:

"* * * in the absence of statutory provisions expressly prohibiting an award of alimony to a wife guilty of adultery, * * * it has frequently been held in other jurisdictions that the wife's adultery does not necessarily cause her to forfeit her right to alimony. [Cases cited from many jurisdictions.] Although many of these cases arose in jurisdictions that permit an award of alimony to a guilty wife even if her husband is blameless, the principle they enunciate is even more applicable in a state such as California in which the guilty wife may receive alimony only if she is granted a divorce against a husband who is also guilty of marital fault. They recognize that comparative guilt is only one factor in determining whether alimony should be awarded and that the needs of the wife and the ability of the husband to provide for her are also important, and they protect the interest of society in not having a wife left destitute. They counsel the wisdom of caution before adopting any arbitrary rule that would fetter discretion and require the trial court to deny alimony merely because the wife has been guilty of adultery. * * *.

"Our conclusion that the adultery of the wife does not compel the trial court to deny her alimony, when both of the parties have been guilty of marital fault finds further support in the cases in which divorces were denied on the ground of recrimination. * * *

"It is true, as the De Burgh v. De Burgh [39 Cal.2d 858, 250 P.2d 598] case recognized, that the comparative guilt of the parties may have an important bearing on the relief that is granted. As pointed out above, however, it is only one of the considerations that are important in determining whether alimony should be granted. Moreover, in any particular case adultery may or may not constitute greater fault than that of the other party, and in the present case we cannot say as a matter of law that plaintiff's infidelities occurring over a period of three months approximately two years before the action was filed were necessarily more outrageous than defendant's course of continuous cruel conduct toward plaintiff that involved physical attacks and beatings and seriously endangered her health. Plaintiff had been married to defendant for 16 years when this action was commenced, she is the mother of three children who need her care, and her health has been impaired to such an extent that her earning capacity is problematical for the immediate future. Under these

circumstances the trial court did not abuse its discretion in refusing to deny her alimony on the ground of her own marital fault." 282 P.2d at pages 870, 871, 872.

The De Burgh case referred to is the one cited and quoted by this court on the rule of comparative guilt in Howay v. Howay, 74 Idaho 492, 264 P.2d 691. In the Howay case we also quoted with approval from 30 C.J.S. Equity § 98 as follows:

" 'The clean hands maxim has its limitations. It does not operate so as to repel all sinners from a court of equity, nor does it apply to every unconscientious act of a party. * * * equity will consider the conduct of the adversary, the requirements of public policy, and the relation of the misconduct to the subject matter of the suit and to defendant.' " Howay v. Howay, 74 Idaho 492, at page 497, 264 P.2d 691, 694.

It follows from the Howay case that the district court may in its discretion grant a divorce to both parties where the pleadings and the facts warrant, and such was done in Shovlain v. Shovlain, 78 Idaho 399, 305 P.2d 737. The principles announced in the De Burgh case and our own Howay case were quoted and approved by the supreme court of Montana in Bissell v. Bissell, Mont., 284 P.2d 264. We also recognized in the Howay case that the state has a paramount interest in marriage and divorce and that the rules of equity must be so applied as to serve the public interest and the public policy of the state. The public interest and public policy cannot be served by a rule of thumb denying alimony to the wife in all cases where the divorce is granted to the husband. Cf. Hampshire v. Hampshire, 70 Idaho 522, 223 P.2d 950, 21 A.L.R.2d 1159.

The principle involved was also recognized in Warner v. Warner, 76 Idaho 399, 283 P.2d 931, where we said:

"The fact that the relationship of the parties may have been meretricious in the beginning, or that they may have been in pari delicto, does not defeat her rights in the property accumulated during such relationship. A court of equity will protect the property rights of the parties in such cases, either according to their agreement in respect to property, or according to principles of equity and justice." 76 Idaho at page 407, 283 P.2d at page 935.

This court has in at least one case enforced an allowance of alimony where the divorce was granted to the husband for misconduct of the wife. Largilliere v. Largilliere, 50 Idaho 496, 298 P. 362.

█ We have held many times that the equity jurisdiction of the district court is not limited to that delineated by statute. Simonton v. Simonton, 33 Idaho 255, 193 P. 386; Sauvageau v. Sauvageau, 59 Idaho 190, 81 P.2d 731; Radermacher v. Rader-

macher, 61 Idaho 261, 100 P.2d 955; Hiltbrand v. Hiltbrand, 68 Idaho 275, 193 P.2d 391; Clemens v. Kinsley, 72 Idaho 251, 239 P.2d 266; Gerlach v. Schultz, 72 Idaho 507, 244 P.2d 1095. Since there is no restrictive language in § 32–706, I.C., against the allowance of alimony to a wife for whose fault a divorce is granted, we conclude that in a case such as the one at bar, where the husband himself is not free from fault, and the wife's fault, though sufficient to justify a divorce to the husband, is not so grievous as to compel a denial of alimony, the court in its discretion may make such allowance.

This conclusion is in harmony with the broad equity powers of the district court, Art. 5, § 20, Idaho Constitution, and with the legislatively established rule of practice in this state, R5–101, I.C. It is not to be construed as a rule requiring alimony to an offending wife in all cases. It is merely a recognition of the power of a court of equity to grant such relief in a proper case.

The order is affirmed. Costs to respondent.

PORTER and SMITH, JJ., and BECKWITH, D. J., concur.

KEETON, Chief Justice (dissenting).

It seems to me the rules which should determine the decision in this case are of statutory origin—clear, plain and unambiguous. Under the provisions of § 32–706, I.C., alimony for the support of the wife can only be granted for an offense of the husband.

When a divorce is granted for an offense of the wife and the community property has been divided, the wife is not entitled to alimony, there being no statutory provision for such allowance. Platts v. Platts, 37 Idaho 149, 215 P. 464. There is no such thing as a common law power to grant permanent alimony. Hence an award of alimony cannot be made except where authorized by statute, and such an award, when made and not so authorized, is beyond the jurisdiction of the trial court. Johnson v. Superior Court, 128 Cal.App. 584, 17 P.2d 1055; Ex parte McKenna, 116 Cal.App. 232, 2 P.2d 429; McLaughlin v. Superior Court, 128 Cal.App.2d 62, 274 P.2d 745.

A review of cases adhering to this view would unduly and unnecessarily prolong this dissent. For collection of cases see, 34 A.L.R.2d 319, § 2, and cases there cited.

The majority opinion can only lead to confusion and unsettle rules established not only by this court, but by the vast majority of decisions in other jurisdictions. The part of the decree awarding the wife alimony for her support should be stricken.