[Civ. No. 5896. First Appellate District, Division One.—October 25, 1929.]

MILO ABERCROMBIE SWENSON, Appellant, v. LYMAN K. SWENSON, Respondent.

C. D. Dudley for Appellant.

Kenneth C. Gillis, Gillis & Edwards and Letitia R. Farber for Respondent.

THE COURT.—This is an appeal by plaintiff from an order modifying a final decree of divorce in so far as its provisions relate to the custody and maintenance of two minor children, a girl and a boy, aged six and one-half and four years, respectively, at the time the order in question was made.

The interlocutory decree was granted to appellant in May, 1925, upon the ground of extreme cruelty, and in accordance with the terms of a written stipulation theretofore entered into between the parties the decree awarded the custody of the children to appellant subject to the conditions hereinafter mentioned, and provided for the payment by respondent of a monthly allowance for their maintenance and education. Respondent is a lieutenant in the United States Navy, and at all the times herein mentioned was assigned to duty on one of the battleships attached to the Pacific fleet; and in accordance with said stipulation the provision in the decree awarding appellant the custody of the children was made subject to the condition that respondent should "have the right to see and have the possession and custody of both of said minor children whenever he shall be present in the port of San Francisco, providing always that said children, and each of them, be returned to the care and custody of the plaintiff at night." In January, 1926, respondent complained in a petition filed with the court that appellant was denying him the right to see the children at the times and in the manner provided in the decree, and he therefore asked to have a provision inserted in the decree requiring appellant "to keep her attorney informed at all times where she lives in order that defendant may know where to secure the custody of the children upon his visits to San Francisco," or in default of her doing so that the custody of the children be awarded to him. Said petition was not brought on for hearing, however, owing to the fact that respondent's ship was at sea continuously for a long period following the filing of the petition. In September, 1926, the final decree of divorce was entered. It contained all of the provisions embodied in the interlocutory decree, and in November, 1926, respondent again petitioned for a modification of the provisions relating to the custody and maintenance of the children, this time asking that the same be vacated and that their sole custody be awarded to

him. The application was based upon the same acts and omissions charged in the first petition and in addition thereto it was alleged that on various occasions since the filing of the former petition he had been "frustrated in his efforts to see said minor children because of the efforts of the plaintiff above named and her mother." Furthermore it was alleged in substance that appellant was instilling into the minds of the children a feeling of unfriendliness and resentment toward him; that she had "made charges and statements against (him) of a serious and derogatory nature, all of which were untrue and made without any foundation and for no cause whatsoever"; and in this connection it was averred that if the children were allowed to remain with appellant she would continue to educate them to the end that eventually they would be completely estranged from him. For the reasons stated, respondent alleged, appellant was no longer a fit custodian of the children. Answering the petition, appellant denied its essential allegations and filed a counter petition asking that the decree be modified so as to award her the sole custody of the children "without right whatsoever in the defendant either to visit or see the children." Her petition was based upon the general allegation that respondent "is such an unfit and improper person as should be excluded from the right of visiting and seeing said children." The petitions were heard together and on the afternoon on which the hearing concluded, and before the court announced its decision on the merits of either petition, the court directed that respondent be allowed to see the children the following day; but, in disobedience of the court's direction, appellant fled to Oregon, taking the children with her; whereupon and on January 6, 1927, the court made its order granting respondent's petition, and on the following day adjudged appellant guilty of contempt of court and issued a bench warrant directing that appellant and the children be brought forthwith before the court. On January 17, 1927, appellant took this appeal, and on April 6, 1927, an order was made staying the service of the bench warrant.

It has been uniformly held that in dealing with questions relating to the care, custody and education of minor children of discordant parents there is confided to the trial court a very extensive discretion in adapting its

orders to varying circumstances and conditions with the view always to conserving the highest and best interests of the children; and that a reviewing court has not the power to interfere with the exercise of such discretion except in the clearest instance of its manifest abuse (*Bancroft* v. *Bancroft,* 178 Cal. 352 [173 Pac. 582]; *Simmons* v. *Simmons,* 22 Cal. App. 448 [134 Pac. 791]; *Jones* v. *Jones,* 49 Cal. App. 165 [192 Pac. 867]; *Black* v. *Black,* 149 Cal. 224 [86 Pac. 505]; *Van der Vliet* v. *Van der Vliet,* 200 Cal. 721 [254 Pac. 945]). Appellant frankly concedes the existence of the foregoing legal principles, but she contends that in the present situation there was a total absence of evidence to show that the modification of the decree was made necessary by any change of circumstances of the parties, or that the best interests of the children would be subserved thereby, or that for any reason she had become unfit to continue as their custodian; and she argues, therefore, that in granting such modification the trial court contravened well-established legal rules governing matters of this kind.

A very broad field of investigation was opened by the numerous accusations made by the respective parties against each other, much evidence being introduced on both sides. After having examined the entire record carefully and given full consideration to all of the points urged by appellant for reversal, we are convinced that the evidence adduced in support of respondent's demand for a change in the custody of the children is legally sufficient to sustain the order made in that behalf. True, as appellant contends, no charges were made or proved reflecting upon her personal conduct, nor was any proof introduced to show that she had been neglectful of the physical well-being of the children; but evidence was adduced which tended strongly to prove that owing to a feeling of intense bitterness appellant entertained toward respondent which antedated the granting of the interlocutory decree she studiously and repeatedly violated the plain terms of her stipulation and the provisions of the decree by resorting to various excuses and subterfuges in order to prevent respondent from seeing or having the children at the times and in the manner therein provided; and that eventually, in furtherance of a manifest determination to prevent him from ever seeing the children again, under any circumstances, she was in-

strumental in inspiring and promoting a scheme directly involving one of the children which had for its obvious purpose the ruination of respondent's character as a man, the bringing about of his complete disgrace as a naval officer, and the destruction of the love and affection which his children had theretofore manifested toward him. As stated by the trial court preliminary to the reception of the testimony, it was certain that if the charges made against respondent were true, they "would show absolute and positive unfitness of the father" to see the children at all, and if the charges were found to be false, such fact "would disclose the unfitness of the mother" to continue as the custodian. The circumstances under which these charges originated and the manner in which appellant exploited them are fully described in the record, and are of such a nature that we can conceive of no good nor useful purpose in elaborating upon them here or in reviewing the testimony bearing upon the same. Suffice it to say that the trial court in unmistakable language declared the charges to be utterly groundless; and a careful analysis of the testimony has convinced us that no fair-minded person could have reached a conclusion any different. In this respect the trial court stated: " . . . I was satisfied yesterday afternoon and I am satisfied today that wherever it may be, some pernicious influence has been at work on the child. I feel without hesitation as a man and a member of a decent civilized society very little hesitation in saying to the husband that I don't think there is a particle of truth in these charges."

As to appellant's activities in exploiting said charges, evidence was introduced to show that shortly after respondent had departed upon the high seas and while he was thus absent appellant laid the charges before a bureau of the department of justice, the federal district attorney's office, and the official head of the naval district, and that after investigations were made, no action was taken by any of these governmental agencies. She also brought them to the attention of a lawyer, a doctor and the editor of a San Francisco daily newspaper; and finally she laid them before the judge of the Superior Court whose jurisdiction respondent had previously invoked in his attempt to compel appellant to comply with the terms of said decree, and upon the

strength of such charges sought to have the judge enter an order depriving respondent of any further right to see the children. She was advised that such an order could be made only after a hearing in court, based upon a petition alleging the facts, but she took no steps toward that end until after respondent had instituted the present proceeding to vindicate his good name and secure the custody of the children.

There is no disputing the soundness of appellant's contention that naturally and presumptively the mother was entitled to the care and custody of children of tender years, but it is also the law that the trial court retains full jurisdiction to modify its decree when, as here, such modification is rendered expedient because of circumstances arising since the rendition of the decree, which vitally affect the welfare of the children. (*Crater* v. *Crater,* 135 Cal. 633 [67 Pac. 1049]; *Bancroft* v. *Bancroft, supra.*) And it is also held that the fact that the children were first awarded to the mother does not preclude the trial court from afterward awarding them to the father upon a proper showing being made (*Crater* v. *Crater, supra*).

In the present case the record further discloses that the trial court's findings that said charges were wholly without foundation and that under existing circumstances it would be detrimental to the best interests of the children to allow them to remain in appellant's custody were based not alone upon the testimony appearing in the transcript, but also upon private interviews in chambers with one of the children in the presence and with the consent of the parties. The trial court had abundant opportunity, therefore, to observe the character and qualities of the respective parties in determining the fitness of each to have the custody of their offspring and to pass upon the other matters relating to the welfare of the children; and we have been unable to find any substantial ground upon which it could be fairly held that the wide discretion vested in the trial court has been abused in awarding the custody of the children to respondent or that any error was committed in so doing. Its order made in that behalf is therefore affirmed.