245 P.2d 810

## THURMAN v. THURMAN.

No. 7823.

Supreme Court of Idaho.

July 1, 1952.

Stephen Bistline, Sandpoint, for appellant.

Hardy C. Lyons, Sandpoint, for respondent.

THOMAS, Justice.

Appellant, hereinafter referred to as the mother, and the respondent, hereinafter referred to as the father, were wife and husband prior to November 10, 1948, on which date the mother was granted a decree of divorce from the father in the District Court of the Eighth Judicial District of Idaho, in and for Bonner County, on the ground of extreme cruelty, and was awarded custody of the minor children of said marriage, subject to the right of the father to have them visit him during designated hours on Saturday and Sunday, conditioned upon payment to the mother of the sum of $60 a month for the support of said children.

In the month of December, 1948, the mother moved to Seattle, Washington, in order to get employment and make a home for herself and her children, and soon thereafter and within the same month the father filed a petition seeking an order to show cause why the mother should not be punished for contempt for removing the children from the jurisdiction of the District Court in Bonner County. The decree did not provide that the children be kept within the jurisdiction of the Court. An order to show cause was issued on the same date but never served upon the mother; on the same date the Court issued an order, without notice or hearing, exonerating the father from payment of support money until the children were produced in Court.

Thereafter, upon petition of the father, an order to show cause was issued requiring the mother to show cause why she should not be punished for contempt of court for failure to comply with the terms of the divorce decree, and to show cause why the Court should not award custody of the minor children to the father, and service thereof was attempted to be made upon the mother by registered mail through the office of the Clerk of the District Court; the mother refused to accept a registered letter containing a copy of the order to show cause, from the mail carrier. Service of the order to show cause was made upon an attorney in Sandpoint, Idaho, who was attorney of record for the mother at the time the divorce decree was had.

Thereafter, on the date set for the hearing under said order to show cause, that is, on the 15th day of February, 1951, the father appeared in person and by his coun-

sel, and the mother appearing neither in person nor by counsel, the Court heard the matter, and, among other things, concluded that the original divorce decree should be modified to award custody of the children to the father, and that the mother was in contempt of Court for failure to comply with its orders and the terms of the divorce decree. A judgment was entered on the same day awarding the custody of the children to the father with certain visitation rights to the mother.

Following the entry of the modified decree awarding custody to the father, the father did, on March 6, 1951, in the State of Washington, based upon said modified decree and pursuant to an order in habeas corpus proceedings, gain actual custody of the children, who have, since such time, resided with him in the home of his mother and father in Sandpoint, Idaho.

The mother had no personal knowledge that a modified decree had been entered until the hearing on habeas corpus proceedings, and thereupon employed her present counsel to represent her interests in such matters; present counsel moved for an order setting aside and vacating the decree as modified, which matter was never disposed of; thereafter, the mother filed a petition for an order to show cause why the Court should not again modify the decree, awarding custody of the children to her, and ordering the father to make monthly payments to her for the support and maintenance of the said children and awarding judgment to the mother for delinquent support payments.

At the conclusion of the hearing the Court found that the father was a fit and proper person to have the custody of the two minor children, a boy of the age of about seven years at that time, and a girl between the age of four and five years, and further found that it was for their best interests and welfare to remain in the care and custody of the father, and that their welfare would be jeopardized by modifying the decree, awarding custody to their mother. The Court did not find that the mother was not a fit and proper person to have the custody of the children, and on the evidence presented no such finding could be supported.

The Court further found that the father had made all payments to the mother for the support and maintenance of the children required of him by the Court; this finding is predicated upon the proposition that from the date of the order exonerating the father from further payments until the children were returned to the jurisdiction of the court, no payments for support of the children were required; judgment was entered continuing the custody in the father with visitation rights in the mother at all reasonable and proper times, and that the mother take nothing with respect to the matter of delinquent support payments.

It is from this order that the appeal is taken.

We will first consider the ex parte order made by the Court without notice or hearing, exonerating the father from making any monthly payments to the mother for the support and maintenance of the minor children until the children were returned to the jurisdiction of the Court. The order made and entered by the Court exonerating the father from making any monthly payments to the mother for the support and maintenance of the minor children, without notice or hearing, is a nullity. Moore **v.** Superior Court, 203 Cal. 238, 263 P. 1009.

It is contended, among other things, that the evidence adduced at such hearing is not sufficient to support the findings as to the fitness of the father to retain the custody of the children; that the conditions and circumstances existing at the time he was awarded custody had been changed and that such changes were such that it was not for the best welfare of the children that the father retain custody and that there is no evidence to support nor no finding made that the mother was not a fit and proper person to be awarded custody of the children.

It is charged by the mother that she has been frustrated in her efforts to see the said minor children and to enjoy visitation rights with them as provided for in the modified decree, through the acts and conduct of the father and his mother, and that through such acts and conduct they had instilled into the minds of the children not only a feeling of unfriendliness and resentment toward her, but had endeavored to and were to a marked degree successful in alienating the affections of the children towards her.

While a very broad field of inquiry was opened by the allegations set forth in the petition for further modification, much of the evidence adduced was confined to the matter of violation of visitation privileges and the alienation of affection. True, there is no evidence in the record which shows that the physical well-being of the children was neglected, but there is abundance of evidence tending very strongly to prove that owing to the feeling of intense bitterness which the father entertains toward the mother, he has, by himself and through other members of his family, whenever occasion arose for the mother to exercise and enjoy her rights of visitation, violated the plain provisions of the decree by resort to diverse and sundry methods to prevent the mother from exercising and enjoying such visitation privileges within the spirit and intent of the decree, and more serious, in destroying the love and affection which these children of tender age had, within a matter of three weeks previously, so plainly manifested toward their mother.

The facts and circumstances under which the charges by the mother originated and the manner in which the father has exploited them are quite fully set forth in the record and are of such a nature that we can conceive of no good or useful purpose to unduly elaborate upon them here or in reviewing the testimony at any great length

in relation thereto. Briefly, as to the activities of the father there is much evidence introduced without contradiction, but with corroboration, to show that within a period of some three weeks after the father acquired custody of the children who, up to that time, as the record reveals without contradiction, were deeply attached to their mother, they would have nothing to do with her and, in fact, to the extent that it was possible for them to do so, they sought to hide out so that she would not have the opportunity of even seeing them; there is evidence in the record, most of it without contradiction, but with corroboration, by disinterested neighbors, who no doubt would find it difficult to testify, to the effect that the little boy stated that he hated his mother, because his grandmother said he hated her; there is evidence in the record by the father himself that he never discussed the children's mother with them, but testified without hesitancy that they did not love their mother.

Upon one occasion, within a period of three weeks after the children had been taken from their mother, she tried unsuccessfully to visit the children in the home of the father's parents; the boy, while being carried into the house by the grandmother over his protests, remarked that he would kick his mother in the face if she even looked at him; the attitude of the father toward the mother on the occasion she tried to enjoy a visit with the children at the office of her attorney, by previous arrangements, was that of an autocrat; throughout the hearing the father manifested arrogance, and was extremely argumentative and evasive. Each attempt of the mother to visit with her children and to fondle them and enjoy in privacy their company was unavailing; the substance of all the evidence concerning the episode on the day the mother went to the home of the father's parents, and on the occasion of the prearranged visit at the office of her attorney, clearly reveals that the mother was not accorded any reasonable opportunity to visit with either of the children.

The only showing made in the hearing on February 15, 1951, at which the mother was not present nor represented, to support the order modifying the original decree with reference to custody, was the testimony of the father's mother to the effect that the apartment in which the mother and her children lived in Seattle was dirty and a dump, and the testimony of the father that the apartment was dirty and there was writing on the wall. In the instant hearing the mother was allowed to testify that since October of 1950, which was prior to the entry of the order awarding custody to the father, she had lived in another apartment in Seattle which was in an excellent area and contained two bedrooms and was well kept and suitable for herself and children. This evidence was offered and received to show that the grounds upon which custody was lost in the earlier order had been removed. She was fully corroborated by other witnesses in this respect.

After the children were taken from the mother pursuant to habeas corpus proceedings in the State of Washington, they were placed in a detention home until the father and his mother could arrange to return them to Sandpoint. While they were in the detention home, and on March 10, 1951, their mother and her sister-in-law visited them; when the mother and their aunt went to the detention home both children rushed to their mother, got upon her lap, and cried and begged that she take them home; the evidence is to the effect that they were very much attached to their mother and manifested deep affection toward her, yet on March 27th of the same year, when the mother attempted to visit them in Sandpoint, Idaho, she was unsuccessful and the attitude of the children was unbelievable.

At the conclusion of the hearing the matter of the Court interviewing the children privately was brought to the Court's attention, but the Court concluded such an interview was unnecessary in order to make proper disposition of the matter.

To justify a substantial modification in a divorce decree there must be a change of circumstances or the discovery of material facts existing but unknown to the court at the time the original decree was rendered. Whenever it has reference to the custody of children their welfare is of controlling importance and in determining such welfare a number of factors may be considered. Animosity on the part of the custodian toward a parent having a right to visit the child, inculcation of hate and disrespect on the part of the child for the other parent, refusal to comply with the provisions of the decree as to visitation privileges, mental incompetency of the custodian, and other misconduct or unfitness of the custodian may be considered. 27 C.J.S., Divorce, p. 1190, § 317.

The best welfare of minor children is promoted by having such children respect and love both parents. This is natural and every effort should be directed to the end that such respect and affection will not be destroyed and alienated; any other course is not in the interest of and for the best welfare of such minor children. Since the rendition of the decree modifying the original decree and giving custody to the father, the evidence shows beyond doubt and without question that circumstances have arisen since such date and within the short period of three weeks and became more intense and pronounced thereafter, in which the affections of the children for their mother had been almost completely alienated; this change affects the welfare of these children of tender years.

The acts and conduct of the custodial parent, resulting in the alienation of the love and affection which children naturally have for the other parent, is a vital and very serious detriment to the welfare of such children and is grounds for modification of the decree with respect to such custody. Johnson v. Johnson, 102 Or. 407, 202 P. 722; Delle v. Delle, 112 Wash. 512, 192

P. 966, 193 P. 569; Ritch v. Ritch, Tex.Civ. App., 195 S.W.2d 205; Rone v. Rone, Mo. App., 20 S.W.2d 545; McLeod v. McLeod, Tex.Civ.App., 9 S.W.2d 141; Kaplun v. Kaplun, Mo.App., 227 S.W. 894; Meffert v. Meffert, 118 Ark. 582, 177 S.W. 1; Albertus v. Albertus, 178 Iowa 1124, 160 N.W. 830.

Modification of a decree awarding custody of minor children to a parent who is a fit and proper person to have such custody is proper where it appears that the custodial parent has contrived to prevent the other parent from seeing and visiting such children in the manner and spirit provided for in the decree, and has shaken their love and affection for the other parent. Swenson v. Swenson, 101 Cal.App. 440, 281 P. 674.

A review of the entire record as to the evidence adduced at the hearing satisfies this Court that the father, together with his mother, has exerted great influence upon these youngsters in a very short period of time, through fear or otherwise, which is not for the best interests and welfare of the children, in that it has shaken their confidence in and their love and affection for their mother. Moreover, there is nothing in the record to show or which could possibly support a finding that the mother was not a fit and proper person to have the care and custody of the children; there is no intimation that she ever for one moment abandoned the children or even surrendered custody except by compulsion; on the contrary, the evidence shows, under the prompt-ing of a mother's love, that she has frantically and with great intensity sought to regain custody at considerable expense upon her part.

This Court has repeatedly held that in awarding custody of minor children the welfare of such children is of paramount importance and is the controlling consideration to guide the Court; furthermore, children of tender age, all other considerations being equal, can and will be reared, trained, and cared for best by their mother. Richardson v. Richardson, 72 Idaho 19, 236 P.2d 718; Brashear v. Brashear, 71 Idaho 157, 228 P.2d 243.

The matter of the disposition of the custody of minor children is initially committed to the sound legal discretion of the trial court, and unless such discretion is clearly abused the judgment will not be disturbed. The same would be true where the custody is changed by modification of the decree. Smith v. Smith, 67 Idaho 349, 180 P.2d 853; Fish v. Fish, 67 Idaho 78, 170 P.2d 802.

The Court below did not find and the record would not support a finding that the mother was an unfit person to have the care and custody of the children. Without attempting to detail the evidence in this respect, suffice to say that the evidence clearly establishes the mother as a fit and proper person to have the custody of the children. While the Court did find that the father was a fit and proper person to retain the custody of the children, and that to re-

turn the custody to the mother would jeopardize their interest, there is no evidence whatever in the record to support any finding that the return of custody to the mother would be detrimental to the interests and welfare of the children. Their welfare is the polar star by which the Court must be guided in awarding their custody. Krieger v. Krieger, 59 Idaho 301, 81 P.2d 1081.

The record reveals that the father has never made any payments to the mother for the support of said minor children, although they were in her actual care and custody from November 10, 1948 to March 6, 1951. During all this time the record reveals that he has had the ability to make the payments as provided for in the original decree; his failure to make such payments constitutes contempt and may and should be considered and weighed against him in determining his fitness for custody. Brashear v. Brashear, supra.

A careful examination of the record supports the conclusion that the father has, by design and planning, prevented the mother from enjoying the visitorial rights within the spirit and intent of the modified decree, and that he has also contrived to and has, without warrant, shaken the respect, love and affection of the children for their mother, and for these reasons we hold that the trial Court clearly abused its discretion in refusing to award the custody of the children to the mother. The best interests and welfare of these children of tender years can only be served by an immediate change of custody and bringing finality to the litigation on the basis of the present facts and circumstances.

The order appealed from is reversed and remanded with instructions to the trial Court to forthwith enter an order modifying the original decree as modified awarding the custody of the children to the mother, and by such order require the father to pay to the mother for the support of said children the sum of $60 a month and to also pay all necessary and reasonable expenses attendant to effectuating a change of custody, including the mother's expenses in transporting said children from Sandpoint, Idaho, to her place of residence.

It is further ordered that for the purpose only of ascertaining the indebtedness for delinquent support payments, that the case be remanded with instructions to the trial Court, to hear, and upon hearing, to enter judgment and an order against the father for support money at the rate of $60 a month commencing December 1, 1948 to and including March 6, 1951, less credit for any payments made, and to give the father reasonable visitation rights.

Costs to appellant.

GIVENS, C. J., and PORTER, TAYLOR and KEETON, JJ., concur.