438 P.2d 268

**Patricia P. SAVIERS, Plaintiff-Appellant,**

**v.**

**George B. SAVIERS, Defendant-Respondent**
**No. 9971.**

Supreme Court of Idaho.

Feb. 26, 1968.

---

Balleisen & Galley and Benoit & Benoit, Twin Falls, Elam, Burke, Jeppesen &. Evans, Boise, for appellant.

Parry, Robertson & Daly, Twin Falls,. George R. Kneeland, Ketchum, for appellee.

SPEAR, Justice.

Patricia Saviers (appellant herein) brought an action for divorce against her husband, Dr. George Saviers (respondent) upon the ground of extreme cruelty. Re--

spondent counterclaimed alleging that appellant was guilty of extreme cruelty and asked that the divorce be granted in his favor. The trial court rendered a decree of divorce in favor of respondent, divided the community property equally, and gave actual custody of the children to appellant so long as she lived with all or any one of them in the family home, but gave legal custody and control to respondent.

On appeal, appellant contends that the trial court erred in failing to give her full legal custody of the children, in requiring that the family home, while appellant is living therein, be maintained primarily for the social welfare of the children, in failing to award her permanent alimony, and in failing to consider respondent's interest in a medical partnership as a community asset in dividing up the property.

The pertinent facts are to be found in the following Amended Findings of Fact of the trial court:

"II.

"Plaintiff and defendant were married on or about July 18, 1947, in Sacramento, California, and since that time have been husband and wife.

"III.

"Four children have been born the issue of this marriage, namely, George B. Saviers, Jr., born June 8, 1950, Frederick G. Saviers, born December 11, 1951, John Peter Saviers, born January 18, 1953, and Georgia Marie Saviers, born January 29, 1956.

"VI.

"The plaintiff is a duly licensed architect and throughout this marriage has engaged in the practice of this profession.

"VII.

"The defendant is a licensed physician and is a member of a partnership engaged in the practice of medicine known as the Sun Valley Medical Group; the Sun Valley Medical Group owns no real property or tangible personal property and no item of good will appears on the books

of this partnership. The evidence does not show any value or vested equity of the community in the partnership of the Sun Valley Medical Group.

"VIII.

"By her actions, during the marriage, the plaintiff inflicted upon the defendant grievous mental suffering and destroyed all of the legitimate objects of this marriage.

"IX.

"Defendant is a fit and proper person to have the care, custody and control of the children of the parties and it is for the best interests of the children that he be granted such care, custody and control.

"X.

"Each of the parties love the children and the children have a deep love and respect for each of their parents. The children feel insecurity and indecision as to the plaintiff and feel security, firmness and guidance with the defendant.

"XI.

"The plaintiff should continue to give the children her love, affection and guidance and should have the right to live in the home with the children to fully accomplish this purpose. This right to live in the home should continue so long as the home is maintained for the children and the children, or any of them continue to make the present family home their home. While the plaintiff is living in the home the cost of that portion of her support occasioned thereby should be paid by the defendant as a general cost of maintaining the home for the children.

"XII.

"Since the birth of the first child of the parties up to the present time, there has always been someone in the home to do the general housekeeping and help with the children, and this should generally continue. The home of the parties should be maintained primarily and basically for the children, and, while either the plaintiff or the defendant may have family

friends in the home, this should only be done when it is for the social welfare of the children as distinguished from having social functions for the benefit of either the plaintiff or defendant. Any such social functions should by their very nature not last into extraordinarily late hours and should be centered around the children as distinguished from the adult members of the family. Such social functions would include small parties for the friends and classmates of the children as adult friends of the family and relatives of the children including the children's grandparents, for whom the children seem to have a very deep and normal love, as do the grandparents for the children. Further, the children should be able to visit their grandparents at reasonable times.

"XIII.

"The defendant shall be responsible for, but shall have control of, the expenses of the home including the wages of the housekeeper. A petty cash fund of $75.00 per month for home maintenance and child care shall be paid by the defendant to the plaintiff and should be under the general control of the plaintiff. This petty cash fund is for the plaintiff's own use in providing the usual small incidental costs that are incurred by a mother from time to time for the benefit of the children and to take care of such incidentals as admission charges to entertainments provided for the children in the community which by their very nature might include the mother in attendance; treats for the friends and classmates of the children and other items which normally would not be available on charge accounts in the community.

"XIV.

"The defendant, as agreed, should furnish the necessary educational costs for said children including the present public school, preparatory school, trade school, or college and professional school to provide the training each child needs, has

aptitude for, and to which he fully and properly applies himself.

"XV.

"All of the present insurance on the life of the defendant, as listed on plaintiff's Exhibit 3, should be used to guarantee said educational needs of the children and if the defendant pays for such educational needs as the same become necessary such insurance should pass entirely to the defendant's full control and ownership. Until that time, all or a sufficient amount thereof should be pledged by the defendant to complete said educational requirements."

These facts are amply supported by competent and substantial evidence and will not be disturbed on appeal. I.C. § 13–219, and the numerous cases annotated thereunder; Rule 52(a) I.R.C.P.; Meredith v. Meredith, 91 Idaho 898, 434 P.2d 116 (Oct.1967); Clements v. Clements, 91 Idaho 732, 430 P.2d 98 (1967).

The trial court then divided the community real and personal property in half, as nearly as possible. The value of appellant's share therein exceeds $40,000.00 once the community property has been liquidated, so it is divisible.

Judgment was entered in accordance with the findings of fact and conclusions of law as delineated herein.

In appealing to this court, appellant raises four principal issues:

(1) The court erred in awarding the legal custody of the children to respondent while in effect awarding the actual custody to appellant; (2) the court erred in failing to award plaintiff permanent alimony; (3) the court erred in the restrictions placed upon appellant's use of the home of the parties, in effect enjoining appellant from having her personal friends, with the exception of friends and relatives of the children in the home; and (4) the court erred in failing to find and place a value on respondent's interest in the good will of his medical partnership.

It will be noted that appellant did not appeal from that portion of the amended judgment in which respondent was granted a divorce from appellant, presumably on the grounds recited in finding of fact No. VIII, i. e., appellant's infliction upon respondent of grievous mental suffering which destroyed all the legitimate objects of the marriage of the parties.

The first issue to be discussed is whether or not the trial court abused its discretion in failing to award appellant permanent alimony.

In order to decide the merits of this contention, it is first necessary to articulate those factors which must be considered in determining whether to grant or deny alimony to a wife whose husband obtains a divorce and to scrutinize the circumstances of this particular case in relation thereto. See Annotation, 34 A.L.R.2d 313 (1954).

This court has recently held that in the absence of a statutory provision expressly prohibiting such an award to a guilty spouse, a district court has the discretionary power to grant alimony by virtue of its equity jurisdiction in a case "where the husband himself is not free from fault, and the wife's fault, though sufficient to justify a divorce to the husband, is not so grievous as to compel a denial of alimony." Good v. Good, 79 Idaho 119, 311 P.2d 756 (1957). This rule does not, however, *require* that alimony be provided to an offending wife in all cases, but merely recognizes the *power of a court of equity* to grant such relief in *proper* cases. Good v. Good, supra.

In *Good*, the husband was granted a divorce on the grounds of extreme cruelty. The facts of that case revealed that the parties were mentally and emotionally opposites, that marriage had resulted in a nervous breakdown on the part of the wife which was not an act of *guilt* (fault) on her part, and that it was for the best interests of the parties, both physically and mentally, that a divorce be granted.

In its amended findings of fact, the trial court in the cause at hand stated that appellant had, by her actions, inflicted upon respondent "grievous mental suffering" and "destroyed all of the legitimate objects of this marriage." The court's memorandum opinion also noted that appellant's philosophy of life had culminated in her "final resolution to go her own way, have her own friends, and conduct herself socially as a single person both as to her children and husband," and that "she refused to take over the duties of a wife or to give up her profession."

Whether these findings amount to an "actual determination that the wife's fault is so grievous as to compel denial of an allowance," see Fisher v. Fisher, 84 Idaho 303, at p. 308, 371 P.2d 847 (1962), we need not decide, for the circumstances of this case so far as are pertinent to the issue of alimony are more than sufficient to uphold the trial court's decree.

The allowance of alimony is, in the first instance, committed to the sound discretion of the trial court, and, although reviewable on appeal, such discretion will not be interfered with in the absence of a *manifest abuse* thereof. Losee v. Losee, 91 Idaho 77, 415 P.2d 720 (1966).

On appeal, this court has often found it necessary to consider a number of variables in determining the propriety of a district court's discretionary rulings in this area. While this court has examined the conduct of the parties toward each other in terms of fault, wrongdoing or unseemly behavior, Farmer v. Farmer, 81 Idaho 251, 340 P.2d 441 (1959); Jolliffe v. Jolliffe, 76 Idaho 95, 278 P.2d 200 (1954), it has also looked to the extent of the wife's needs and her physical ability to meet those needs, i. e., earning capacity, Nichols v. Nichols, 84 Idaho 379, 372 P.2d 758 (1962); Farmer v. Farmer, supra, as well as the extent and amount of community property awarded, Farmer v. Farmer, supra, and the inequities of turning a wife out destitute to become an object of public charity. Good v. Good, supra. In *Nichols*, supra, the husband was granted a divorce on the ground of extreme cruelty, and this court upheld

that portion of the trial court's decree denying permanent alimony to the wife where it appeared from the evidence that she was physically able to work and earn income (the record showed that she worked regularly at part time employment, earning $100 per month over and above deductions) and that she was also receiving child support payments for her two teen-age children from a former husband.

■ To be sure, each case must be decided on its own merits. The record is replete with evidence to sustain the trial court's finding that appellant inflicted grievous mental suffering upon respondent thereby destroying all the legitimate objects of this marriage. In fact appellant does not challenge this finding.

. Appellant is a licensed architect in the state of Idaho with her own architecture business (studio valued at $12,000) in the town of Ketchum. Although she testified that her business did not usually operate at a profit and that her profession could not support her in Ketchum, her books showed a gross income of over $4,000 in 1964. Respondent, on the other hand, testified that there were many available jobs opening up in Ketchum with the Janss Corporation, the owner and operator of Sun Valley, and that appellant was perfectly able to carry on her business of architecture.

Upon division of the community property, appellant's share will exceed $40,000.00. By the amended judgment, appellant was awarded her studio, the Citroen car, her personal effects, one-half the value of the family home and furnishings which sum she is to receive at the rate of $200 per month together with 6% interest on the unpaid balance, and one-half the value of the parties' securities and a certain parcel of real estate, after liquidation and payment therefrom of all the community debts including the costs and attorneys' fees of both parties in the trial court.

In addition to the foregoing, appellant was given the right to live in the family home so long as it is maintained for the children, or any one of them. Respondent is obligated to furnish all the expenses for the support and education of the children, including the maintenance of the home and the salary for a general housekeeper, together with that portion of appellant's support occasioned thereby, and a petty cash fund of $75.00 per month for her use in connection with the children. While not expressly designated as alimony, such provisions will provide appellant with room, board and a housekeeper at the expense of respondent, leaving her free to pursue a full-time career in her profession.

Appellant takes the position that in all cases of divorce it is the *duty* of the husband to support the wife, the amount of such support depending upon the husband's ability to earn money, and that permanent alimony must be awarded in this case. As noted earlier, the *Good* case, supra, merely recognizes the discretionary power of the district court to award alimony, and does not hold that such alimony should be granted as a matter of course or right.

We are constrained to the view that the district court did not abuse its discretion in failing to provide appellant with permanent alimony. To recapitulate, the trial court found, upon ample evidence, that appellant, by her own actions, was primarily responsible for the break-up of this marriage. Appellant has her own profession, is physically able to work and earn sufficient income to meet her own needs, and is receiving full child support payments from respondent, as well as the right to live and be maintained in the family home with the children. Compare Nichols v. Nichols, supra. Appellant's equal share in the division of the community leaves her with substantial assets, far from the rolls of public welfare.

■ Under the facts of this case it should not be the policy of the law of this state to give appellant a perpetual lien on her divorced husband's future income. See Morgan v. Morgan, 59 Wash.2d 639, 369 P. 2d 516 (1962).

■ Additionally, this court has held within the past few months that the trial

court is given a broad discretion in granting or *denying* an award of alimony, and such an award granted by the trial court will not be disturbed in the absence of a *clear abuse of discretion*. Clements v. Clements, 91 Idaho 732, 430 P.2d 98 (1967). The record discloses no such abuse of discretion in this cause.

 Next we turn our attention to the custody provisions of the decree. While some members of this court, if sitting as the presiding trial judge in this cause, may well have provided for legal and actual custody of the children in one of the parents or the other, providing also for reasonable visitation rights to the party not awarded the custody of the minor children, nevertheless the question of custody is, in the first instance, committed to the discretion of the trial court; and its determination of that issue will not be disturbed on appeal in the absence of an abuse of that discretion. I. C. § 32-705; Clements v. Clements, supra; Loveland v. Loveland, 91 Idaho 400, 422 P.2d 67 (1967); Merrill v. Merrill, 83 Idaho 306, 362 P.2d 887 (1961). The evidence is insufficient to show such a clear abuse of discretion on the part of the trial court on the issue of the divided custody of the minor children, and therefore it will not be disturbed on this appeal

 In her next contention appellant claims that the restrictive use provisions of the decree contained in paragraph IV of the amended judgment in fact make her virtually a prisoner in the family home, the use of which was awarded her so long as all or any of the children reside therein with her. The portions of paragraph 4 which are most objectionable to appellant are set forth in the amended finding of fact No. XII set out verbatim hereinbefore. The crux of appellant's argument is set forth on page 15 of her opening brief, wherein it is stated:

" * * * She wants to live there not as a hired maid cut off from the outside world but as a normal human being. The court found that she couldn't have her friends there unless they were friends

of the children. Can one imagine a person being forced to live in a home or any place for that matter and yet not be able to have normal relationship with fellow human beings? In order to see someone, in order to visit someone, she would have to go outside the home.
* * *"

This argument is without merit. In making the objectionable findings of fact and including them as provisions of the amended judgment, the trial court obviously was making every effort to provide for the welfare and best interests of the children and was merely continuing his efforts, in this same respect, when he awarded a divided custody of the children. That this is the polar star and the primary, paramount and controlling consideration by which Idaho courts are to be guided in determining the custody of minor children is no longer open to dispute. Meredith v. Meredith, supra; Peterson v. Peterson, 77 Idaho 89, 288 P.2d 645; Richardson v. Richardson, 72 Idaho 19, 236 P.2d 718. Without detailing it, suffice it to say the evidence adduced at the trial of this cause amply supports the view that it would not contribute to the welfare or best interests of the children to permit the usual friends and associates of appellant to carry on their habitual social activities in the home, and in the presence, of the minor children of the parties. Additionally, it is self-evident that appellant's activities outside the home with whomever she should choose have in no manner been circumscribed by the limitations of the decree concerning the use of the family home by appellant. No abuse of discretion in this regard was made by the trial court, and the judgment will not be disturbed on appeal.

 In her final contention, appellant claims error by the trial court in failing to find and place a value on respondent's interest in the "good will" of the medical partnership of which respondent was a member. Careful reading of the entire transcript of the trial of this cause discloses there was no evidence adduced upon which

the trial court could have placed any value on such "good will." Therefore, no error was committed by the trial court in this respect.

This leaves for disposition only the motion of the attorneys for appellant for attorneys' fees and costs on appeal. In view of the fact that the trial court did not act on appellant's motion for attorneys' fees and costs on appeal, we are of the opinion that $1,000.00 should be allowed for attorneys' fees.

Judgment affirmed. No costs allowed.

TAYLOR and McQUADE, JJ., and YOUNG and HAGAN, District Judges, concur.