454 P.2d 756

Shirley Mae **TOMLINSON**, Plaintiff and
Cross-Defendant-Respondent,

**v.**

Karl Don **TOMLINSON**, Defendant and
Cross-Plaintiff-Appellant.

No. 10253.

Supreme Court of Idaho.

May 22, 1969.

Robert J. Fanning, of Albaugh, Bloem,
Smith & Pike, Idaho Falls, for appellant.

Thomas E. Moss, Blackfoot, for appellee.

SHEPARD, Justice.

This case arrives here procedurally as a result of a modification of a previously issued divorce decree. The district court issued an order changing the custody of the children from their father to their mother. It is the most fundamental rule of appellate procedure that this Court will not attempt to substitute its judgment and discretion for that of the trial court except in cases in which the record reflects a clear abuse of discretion by the trial court. I.C. § 32–705; Saviers v. Saviers, 92 Idaho 117, 438 P.2d 268 (1968); Clements v. Clements, 91 Idaho 732, 430 P.2d 98 (1967). "In a divorce action an abuse of discretion occurs when the evidence is insufficient to support a finding that the interests and welfare of the (children) will be best served by changing the custody of the (children)." Larkin v. Larkin, 85 Idaho 610, 382 P.2d 784 (1963); Rogich v. Rogich, 78 Idaho 156, 299 P.2d 91 (1956). It is manifest from the record presented here that the trial court clearly abused its discretion. It is unfortunate that in view of our ruling this opinion must necessarily review at length the circumstances as clearly shown by the uncontroverted evidence.

Appellant and respondent were married in 1960. There were born of that marriage two children, one boy and one girl, who are now approximately aged 8 and 6, respectively. In July, 1965, the respondent wife filed a complaint against the husband seeking a divorce, custody of the children, and support. Defendant entered his answer and cross-complaint, in which he sought, among other things, the custody of the children on the ground that the wife was then living in adultery with one Bill Tomlinson, defendant's uncle. On the 14th day of December 1965, a default judgment was entered in favor of the husband. Respondent later claimed that she was not served with process. However, such claim was not substantiated in the record and the trial court in his comments indicates that he believed the respondent mother did not have enough interest in the matter to make an appearance. In any event, the trial court, upon the entry of the default, made findings of fact and conclusions of law, which findings and conclusions were incorporated and adopted by the trial court in the present motion for modification. Among other things, the court found as facts that the wife voluntarily left the home of the husband, associated openly and notoriously with Bill Tomlinson, lived at the time with the said Tomlinson, and held herself out to be his wife. The court found that they were living in adultery and that the wife was in fact then pregnant by Bill Tomlinson. The court further found that Bill Tomlinson had been married twice previously and ten children had been born as the issue of his marriages, none of whom had been adequately supported by him. It found that Bill Tomlinson drank intoxicants to excess and that when so intoxicated became violent, abusive, and had on various and diverse occasions beaten his wives and children. It held that Bill Tomlinson was not a fit or a proper person to be associated with the children. The court further found that the wife neglected the children, and because of this, association with Bill Tomlinson, she, too, was an unfit and improper person to have the care and custody of the children. The court found that the father, on the other hand, was a fit and proper person to have custody of the children.

The court awarded a default judgment of divorce to the husband and awarded him custody of the two children. The custody of the children is the only point at issue here. There is no contention by either party that the findings of the trial court in the original decree of divorce were not correct and did not accurately represent the circumstances existing at that time.

Appellant husband placed the two children in the care of their paternal grandparents and all the evidence presented indicates that that home was a proper and desirable one in every manner. In August, 1967, appellant father married one Doris

Tomlinson. She had been previously married and she and her three children, presently all under ten years of age, had been abandoned by her previous husband. Appellant and his present wife and their five children now live in a farming area outside of Terreton, Idaho. The record before us is devoid of any evidence critical of the present home life of the children. It appears undisputed that the appellant and his wife and their five children are an ordinary family in every respect. The children are loved and well cared for in every way—spiritually, morally, educationally and materially. There is some point made by respondent that the father of the children does not earn as much money presently as does Bill Tomlinson, the present husband of respondent. But there is no criticism by the respondent of the father and his present wife or that they in any way abuse the children or provide other than an almost ideal atmosphere for their custody and rearing. In fact, respondent admits that the appellant and his present wife have taken great care to prevent any alienation of the children from the mother and her present husband. They appear also to have cooperated in every way to facilitate the exercise of the visiting privileges established by the court. There is testimony that the respondent mother was made welcome in the home of the father and his present wife, and even that gifts were made by the present wife of appellant for the children to give to their mother at Christmas.

Turning now to a consideration of the circumstances of the respondent mother, the evidence is uncontested that the trial court was correct in all of its findings in connection with the original decree of divorce, to-wit: that the mother was living in adultery with Bill Tomlinson, the uncle of her husband; that she at that time was then pregnant by him; that he was virtually an alcoholic; that he was known to be violent and abusive not only to his former wives but also to his children; that he had failed to adequately care or contribute financially to his previous ten children; that some of them grew up with grandparents or great-aunts; that he had a criminal record for drunkenness and bad checks and had spent time at various occasions in jail.

Shortly after the award of the divorce dissolving the marriage of appellant and respondent, respondent married Bill Tomlinson and they moved to Salt Lake City. Within a matter of days after the marriage the child was born, but died shortly after birth. Respondent and her new husband have had an additional child. The testimony shows that respondent mother is presently 26 years of age and her new husband is approximately 46 years old.

In 1966, approximately one year after the issuance of the divorce decree, respondent herein petitioned the trial court for a modification of the divorce decree, asking that custody of the children be placed in her. Testimony was presented at that time by both parties. However, no reporter was present and therefore the transcript is lacking in this respect, except as said evidence was repeated in the latest hearing for modification. The testimony adduced at the previous modification hearing, to the extent that we can determine the same, sought to establish a change of circumstances on the part of the mother and her husband. That petition for modification was denied by the trial court. The record before us indicates that the petition of the mother for a modification of the decree was denied on the ground that while she was at that time no longer living in adultery and had in fact married the man, there was no sufficient showing that the present husband had sufficiently changed his ways of life to make him a fit and proper person to be associated with these two children. The husband evidently testified that he had reformed and was no longer an alcoholic. That testimony was controverted, however, when the brother of Bill Tomlinson came before the court and testified that Bill Tomlinson was not to be believed because he and Bill Tomlinson had been drinking together. In fact, he said they had both

been drunk on diverse occasions since the marriage of Bill Tomlinson to the mother of the children herein.

The record of the proceedings on the present petition for modification reflects testimony by the mother of the children, by Bill Tomlinson, by a 23-year-old son of Bill Tomlinson, and by the employer of Bill Tomlinson. All testify to the effect that he has reformed and is no longer an alcoholic, that he loves his present new child, and that he is working steadily at a job in Salt Lake City, where he and his wife intend to remain. He has had no recent trouble with the law, and he is now a fit and proper person to have the custody of the two children together with his present wife. These facts do not appear to be disputed by the appellant.

There is absolutely no evidence, and in fact respondent admits, that the circumstances of the father and his wife have not changed since the previous modification decree. The father and his present wife, in effect, are admittedly fit and proper persons to have custody, and the home situation is almost ideal from the standpoint of the children.

The respondent mother states that the children love her (which is not contested) and that they would prefer to be living with her rather than their father. During the hearing on the petition for modification, the trial court interviewed the two children, then approximately aged 7 and 5, evidently in an effort to determine what their preferences were as to their custody.

Having reviewed at length the matters which were before the trial court upon which he could make his judgment, we then turn to the decision of the trial court. The court found, among other things:

"(1) That W. H. Tomlinson has successfully contended with the alcoholic addiction to which he was previously subjected. He has so far been the victor in the battle and it appears that he can be trusted to care for his wife and his children in a suitable manner. * * * (3) The stepmother has impressed this Court as being an unusually fair, capable and efficient young lady and a good mother to her children. * * * (5) That the plaintiff (mother) is lost, tormented, and distressed because she does not have her children.

"Plaintiff would be a good mother to her children and her present husband would be likely to be a good father to the children. The relationship between plaintiff and her husband would be strengthened by having the children. Defendant's present wife has three children of her own, and properly caring for them and for others to come, no doubt, will keep her busy. (8) The two additional children place a burden upon her which she accepts good naturedly, but which should not be required of her.

"(9) The Court has talked to these two minor children. Frequent changes in their custody have bred feelings of insecurity and uncertainty. (10) They need their mother. If they must make a choice they would choose plaintiff and they have expressed such a choice to the Court. (11) The welfare of these minor children both from a material point of view (their natural mother and her husband are financially better off than their father and his wife) and from a more sentimental point of view (they need their mother—even more so, she needs them) require a change.

"It is unfortunate that these situations must arise where children must be torn between the man whom they love as a father and the woman whom they love as a mother. It is unfortunate that they must make a choice, but the facts of life are such that when a divorce is granted if minor children are involved, choices are forced upon us. * * *

"It is unfortunate, also, that the Court does not have the ability to look into the future and to foretell what will happen one year, five years, twenty years from now. The Court recognizes that human beings are such that either parent might during the succeeding years

prove incapable of properly caring for the children. *In this case the history of W. H. Tomlinson is such as to rouse suspicions. A misstep by him could lead to another change and could blight again the lives of these children and of their mother. But anyone can change if they will. If they do change, then they should receive encouragement. If they slip, the Court still has jurisdiction.*" (Emphasis supplied by this Court.)

The above comments of the district court, particularly those last emphasized, we believe indicate most clearly an abuse of discretion.

◼ It has been stated often by this Court and others across the country that in matters pertaining to the custody of children of divorced parents the welfare and best interest of the children is the primary, paramount and controlling consideration. Saviers v. Saviers, 92 Idaho 117, 438 P.2d 268 (1968); Bryant v. Bryant, 92 Idaho 76, 437 P.2d 29 (1968); Larkin v. Larkin, 85 Idaho 610, 382 P.2d 784 (1963). Personal wishes of the parents and even of the children must yield to this overriding consideration. Larkin v. Larkin, supra; Jeppson v. Jeppson, 75 Idaho 219, 270 P.2d 437 (1954); Tobler v. Tobler, 78 Idaho 218, 299 P.2d 490 (1956). See also Saviers v. Saviers, supra; Bryant v. Bryant, supra.

◼ We may concede generally that children of tender ages, *all other considerations being equal,* are best reared by their mother. Bryant v. Bryant, supra; Parks v. Parks, 91 Idaho 420, 422 P.2d 618 (1967); Krieger v. Krieger, 59 Idaho 301, 81 P.2d 1081 (1938). However, where it is in the best interest and welfare of the children, an award of custody to the father is not unwarranted. Bryant v. Bryant, supra; Parks v. Parks, supra; Jeppson v. Jeppson, supra; Stevens v. Davis, 78 Idaho 331, 303 P.2d 240 (1956).

◼ The custody of children should not be awarded as a reward for reformation or good behavior nor to encourage continued good behavior. Application of Anderson, *79 Idaho 68, 310 P.2d 783 (1957).* It is a most common, ordinary and laudable thing for a mother to love her children and for children to love their mother. However, such love should not be used as the determining factor in the award of custody. We can assume that almost every mother would be distressed by losing custody of her children, but custody of children should not be awarded because their mother is "lost, tormented and distressed" in not having her children.

◼ It is the welfare of the children— not the parents—which must determine the custody of minor children. Larkin v. Larkin, supra; Tobler v. Tobler, supra; Rogich v. Rogich, supra; Stevens v. Davis, supra.

◼ The children, when interviewed by the trial court in chambers, were of the ages of 7 and 5, respectively. Although the interview is not reported, the trial court advises that the children indicated a desire to be placed in the custody of their mother. At the then age of these children, their wishes and desires, if considered at all, should certainly not constitute a determining factor, except in the most difficult and Solomon type of case, which the case at bar is not. 4 A.L.R.3d 1396; Larkin v. Larkin, supra; Tobler v. Tobler, supra; Rogich v. Rogich, supra.

As pointed out above, respondent mother and her her husband are residents of Salt Lake City, Utah. If awarded custody of the children they would take them to the State of Utah. We have said in comparable cases that permission to take a child beyond the jurisdiction of the court places the child beyond the reach of the orders of the court, and such an award of custody should be granted only where the welfare and best interest of the child clearly require it. Larkin v. Larkin, supra; Jeppson v. Jeppson, supra. Certainly in the case at bar the welfare and best interest of the children do not clearly require a change in custody. There is no showing whatever that a change in custody would promote the best interest or welfare of the children. The district court even recognized that.

there was a certain amount of risk involved in placing the children in the custody of the mother and her husband. The court further recognized that frequent changes in the custody of the children have bred feelings of insecurity and uncertainty in the children; yet the court nonetheless prescribed still another change in custody.

The sum of the evidence indicates no controverted matters. It clearly shows that the father has been and continues to be a fit and proper person to have the custody of the children, and that no risk of future misconduct is apparent in his situation. The respondent mother, on the other hand, was in the past far from a fit and proper person, but it is hoped that she and her present husband have rehabilitated themselves. There is an element of risk attached to the placement of the children with the mother because of the past behavioral patterns of her and her husband. "A divorce decree granting custody of a minor child to one of the parties (in that case the father) may not be modified unless there has been a material, permanent and substantial change in conditions and circumstances subsequent to entry of the original decree which would indicate to the court's satisfaction that modification would be for the best interests of the child." Rogich v. Rogich, supra; Dawson v. Dawson, 90 Idaho 234, 409 P.2d 434 (1965); Application of Anderson, supra. The children suffer from changes of custody. The courts of this state would lose jurisdiction if the custody of the children were awarded to the mother.

We therefore hold that it was an abuse of discretion and hence error to grant the mother's motion for modification of the original divorce decree and grant her the custody of the children. The action of the trial court is reversed with instructions to enter an order denying a modification of the original divorce decree as moved by the respondent. The trial court having denied a motion for an order placing temporary custody of the children with the mother during the pendency of this appeal, no further action is deemed necessary. Costs to appellant.

McFADDEN, C. J., and McQUADE, DONALDSON and SPEAR, JJ., concur.