Kathleen Ann (Steffick),
GARDING, Appellant,

v.

James E. GARDING, Appellee.

No. S–2437.

Supreme Court of Alaska.

Jan. 13, 1989.

Robert C. Erwin, Erwin & Smith, Anchorage, for appellant.

Shelley M. Ditus and R. Stanley Ditus, Anchorage, for appellee.

Jeanne Riley, Anchorage, Guardian ad Litem.

Before MATTHEWS, C.J., and
RABINOWITZ, BURKE, COMPTON
and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

Kathleen Garding Hardoin (Kathleen) appeals from an Alaska superior court decision modifying a Montana custody decree and awarding custody of their two minor children to James Garding (James). We reverse.

*Background.*

James Garding and Kathleen Garding Hardoin entered into a common-law mar-

riage in Helena, Montana, in 1980. Two children, Ellisha and Tyler, were born of the union. The couple separated in 1983, and Kathleen filed a complaint for divorce in February 1984. They signed a settlement agreement on August 8, 1984, which gave custody of the children to Kathleen. James was allowed visitation and ordered to pay child support.

After their separation, James moved to Alaska with his girlfriend, whom he subsequently married. Kathleen relocated to Idaho with her boyfriend, Matt Hardoin, who left her a few months later. Kathleen returned to Montana to give birth to Matt's son, Christopher.

In January 1985, about three months after Christopher's birth, Kathleen went to Michigan to locate Matt and seek reconciliation. Before she left, she took Ellisha and Tyler to a babysitter in Missoula, Montana.

While Kathleen was in Michigan, the children became ill. Because Kathleen had not signed a medical release, the babysitter contacted Montana health and welfare authorities. Kathleen learned of the children's illness through a friend. She then contacted her mother, who lived in Missoula and with whom she had had no contact for several years. Kathleen's mother contacted James in Alaska. She told James that Kathleen had abandoned the children, and that he should come after them.

Kathleen returned to Montana on January 26, and she and the children stayed with friends in Helena while she and James negotiated a settlement for joint custody. The agreement placed physical custody of the children in each parent every other year, beginning with James from February 1985 until February 1986. Pursuant to the agreement, James travelled to Montana on February 8 to pick up the children.

A divorce hearing was held in Montana on February 14, 1985, three days after James had returned to Alaska with the children. James did not attend the hearing, but was represented by counsel. The court incorporated the settlement agreement signed by James and Kathleen into the divorce decree.

In February 1986, when James was to return the children to their mother, Kathleen requested that the children remain with James until she could afford to bring them to Michigan in April. On March 3, 1986, James petitioned the Alaska superior court to modify the foreign decree and to award custody of the children to him.

■ A guardian ad litem was appointed to represent the interests of the children. Two hearings were held. On April 2, 1987, the superior court entered an interim order granting Kathleen temporary custody of the children for four months. The second hearing was held in September 1987. The Alaska court then modified the Montana decree,[1] awarding sole legal and physical custody of both children to James, and granting reasonable visitation to Kathleen. Kathleen appeals.

*Analysis.*

In determining whether to modify a child custody decree, Alaska courts are governed by AS 25.20.110, which provides:

> An award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child. If a parent opposes the modification of the award of custody or visitation with the child and the modification is granted, the court shall enter on the record its reason for the modification.

In contrast to the initial award of custody, which, in disputed cases shall be granted "on the basis of the best interests of the child," AS 25.20.060(a), modification of a

---

1. An Alaska court may not modify a Montana child custody decree unless (1) Alaska has jurisdiction and (2) Montana does not. See AS 25.30.130(a). Alaska has jurisdiction because Alaska was the home state of the children at the commencement of the modification proceeding.

See AS 25.30.020(a)(1)(A). Montana lost its continuing modification jurisdiction when Kathleen, James, and the children left the state. See Mont.Code Ann. § 40-4-211(a) (1987). Therefore, the Alaska superior court has jurisdiction to modify the Montana decree.

custody award depends upon a change in circumstances.

■ In this case the parents stipulated to a custody arrangement; there was no initial determination by the Montana court of the children's best interests. Such an arrangement between the parents does not render the changed circumstances doctrine inapplicable. This doctrine requires the parent seeking modification of custody to show that circumstances have changed significantly since the prior custody order was entered before a court will consider modifying custody. In 1970 this court explained that the changed circumstances doctrine is "a rule of judicial economy designed to discourage discontented parents from continually renewing custody proceedings." *King v. King,* 477 P.2d 356, 360 (Alaska 1970). In 1982, when the state legislature codified the changed circumstances doctrine, it expressly found "that it is in the best interests of a child to encourage parents to implement their own child care agreements outside of the court setting." Ch. 88, § 1(b), SLA 1982.

Competing concerns arise when a parent seeks modification of a custody arrangement based on a stipulation or agreement of the parties rather than on a court order. On one hand, judicial economy demands that parties not be permitted to continually renew custody proceedings. On the other hand, since a custody agreement between the parties may have been "rubber stamped" by a court with little or no inquiry into its terms, there may have been no previous judicial determination of whether the custody arrangement to which the parties agreed was in the children's best interests.

■ In *S.N.E. v. R.L.B.,* 699 P.2d 875 (Alaska 1985), the parties entered into an agreement at the time they divorced granting custody of the couple's child to the mother. Three years later, the father attempted to gain custody. *Id.* at 877. This court held that "the changed circumstances doctrine applies to modifications of stipulated child custody arrangements in effect for a significant period of time." *Id.* at 878. We also noted that "[t]he burden of proving a substantial change in circumstances is on the moving parent." *Id.*

The custody arrangement at issue here had been in effect for more than a year when James petitioned for modification. James thus had the burden of proving that a substantial change in circumstances justified a modification of the custody arrangement. Our review of the record leads us to the conclusion that he did not carry that burden.

■ The superior court's findings with regard to changed circumstances were as follows:

10. Cooperation between parents is essential if joint custody is to be in the childrens' [sic] best interest. Since the entry of the Montana decree on February 14, 1985, both parties have demonstrated that they are unable to cooperate with each other to the extent necessary to make a joint custody arrangement work.

11. Circumstances have changed since the entry of the Montana decree as follows:

(1) The parties no longer reside in the State of Montana;

(2) Both parties have remarried and appear to have successful marriages;

(3) Both parties have children with their new spouse;

(4) The economic situation has improved for both parties;

(5) Both parties are more stable and mature; and

(6) The parties reside in different states and are separated by a long distance from each other.

The superior court's finding number 10 is clearly erroneous. Apart from James's attempt to gain sole custody, no evidence was presented that the parties had become "unable to cooperate with each other to the extent necessary to make a joint custody arrangement work." Further the superior court's findings 11(1) and (6) to the effect that the parties "no longer reside[d] in ... Montana" and "reside[d] in different states ... separated by a long distance" do not represent a change from the parties' circumstances at the time the Montana decree

was entered. At that time James was residing in Alaska and Kathleen was preparing to move from Montana to Michigan.

■ As for the other facts found by the superior court, in findings 11(2), (3), (4), and (5), "[w]e have previously held that mere improvement in the position of one of the parties is not sufficient to justify a change in custody." *Gratrix v. Gratrix,* 652 P.2d 76, 83 (Alaska 1982). *See also Nichols v. Nichols,* 516 P.2d 732 (Alaska 1973) (passage of time combined with mother's improved circumstances following remarriage not sufficient cause to modify custody decree). Where, as in the instant case, both parties' positions have improved, there is even less justification to modify the shared custody agreement and to award sole custody to one parent.

On the basis of the foregoing we conclude that the superior court's order modifying custody must be REVERSED.

BURKE, Justice, dissenting.

Today, we elevate the requirement of changed circumstances to a wholly undeserved level of importance. As a result the Garding children now find themselves trapped in a custody arrangement which was determined to be contrary to to the children's best interests by the only court to consider the question, the Alaska Superior Court. Such callous indifference to the welfare of these and other children in like circumstances compels me to dissent.

More than a decade ago, the Idaho Supreme Court observed:

> While the material, permanent and substantial change standard is a sound legal principle, care must be exercised in its application. The tendency is to search for some greatly altered circumstance in an attempt to pinpoint the change called for by the rule. Thus, the emphasis is placed on defining some change, and making that change appear, in itself, to be material, permanent and substantial. This focus is misleading. The important portion of the standard is that which relates the change in conditions to the best interest of the child. The changed circumstance standard was designed, as a matter of policy, to prevent continuous re-litigation of custody matters. That policy goal, however, is of secondary importance when compared to the best interest of the child, which is the controlling consideration in all custody proceedings. The court must look not only for changes of condition or circumstance which are material, permanent and substantial, but also must thoroughly explore the ramifications, vis-a-vis the best interest of the child, of *any* change which is evident. What may appear by itself to be a small and insignificant change in circumstances may have significant effects insofar as children are concerned.
>
> Care must also be taken to avoid "compartmentalizing" consideration of a child's best interest in successive attempts at custody modification. The best interest of a child, like its growth, is a matter of development. An emerging pattern which is not apparent in a first consideration may come into focus at some later time. The court should allow and consider all evidence relevant to a child's interest, not just that evidence which has emerged since previous orders.

*Poesy v. Bunney,* 98 Idaho 258, 261–262, 561 P.2d 400, 403–404 (1977) (citations omitted; emphasis in the original). This, in my judgment, is the correct view. Our decision today provides a good example of what happens when a court succumbs to the unfortunate "tendency" noted by the Idaho court. In our misguided search for *a particular kind of change,* we have lost sight of what should be our primary goal: a decision which promotes the best interests of the Garding children.[1]

1. The Idaho standard requires "a material, permanent and substantial change in conditions and circumstances subsequent to entry of the original decree which would indicate to the court's satisfaction that modification would be for the best interests of the child." *Poesy v. Bunney,* 98 Idaho at 261, 561 P.2d at 403 (quoting *Tomlinson v. Tomlinson,* 93 Idaho 42, 47, 454 P.2d 756, 761 (1969)). Thus, it is more

There has, in fact, been a substantial change in circumstances. Indeed, one is hard pressed to find *any* circumstance bearing on the children's well-being which remains the same as when the Montana decree was entered. This being the case, the only question that should concern us is whether the trial court erred in determining that the decree no longer serves the Garding children's best interests. Sadly, the majority ignores this most important question.

demanding than the standard set forth in AS 25.20.110.